IN ERROR.
· · · · ·
ALBANY,
Feb. & March,
1810.

JOHN WILKES and
    MARY his wife,                                    } Appellants,

                        against

WILKES and
WIFE
v.
ROGERS and
others.

JOHN ROGERS, GEORGE PIXTON RO-
    GERS, and MARY ROGERS, by } Respondents.
    ISAAC L. KIP, their guardian,

Exceptions to reports of masters in chancery are in the nature of special demurrers, and the party objecting must lay his finger on the error, otherwise the part not excepted to, will be taken as admitted. A court of chancery cannot set aside a report upon exceptions not taken, and require further proof; not even in a case where infants are concerned, when they have a guardian.

Where a father died intestate, leaving a large real and personal estate; it was held, that the mother was entitled to be allowed out of the portion of the estate belonging to the children, for their maintenance, during infancy; and that for the time past, as well as time to come; and that she was to be charged with interest on two thirds of the money she had received, in managing the estate, and to be allowed interest on all the sums expended by her.

JOHN ROGERS, the father of the respondents, and former husband of *Mary Wilkes*, died intestate, in the year 1799, leaving a large real and personal estate. On the death of her husband, the widow took possession of the property and managed it for the benefit of the persons interested, under the advice of counsel, and the friend of her deceased husband. Letters of administration were afterwards duly granted to her, and in *November*, 1806, she married the appellant, *John Wilkes*, who declined any interference with the property; but in *January*, 1807, joined in an application to the court of chancery, for the appointment of a guardian to the children. *Isaac L. Kip* was accordingly appointed, pursuant to an order of the court, of 17th *March*, 1807, guardian of the estate of the infants, having given security for the faithful discharge of the trust, and *Mary Wilkes* was appointed guardian of their persons; and it was referred to one of the masters of the court to ascertain and report proper allowances for the education and support of the infants. It appeared that the appellant, *John Wilkes*, on his intermarriage with the other appellant, caused the books of account, documents, evidences of debt, and all other property belonging to the estate, or that related to its administration, to be delivered to Mr. *Kip*, the guardian. On the 8th *April*, 1807, the guardian entered on the execution of his trust; and in order to have the rights of the parties interested in the estate ascertained and settled, the guardian, in *May*, 1807, filed a bill against the appellants for an account. The bill, among other things, stated that the appellant, *Mary Wilkes*, possessed herself

of the personal property, and the respondents being with-
out any relations or friends in the state of *New-York*, who would consent to become guardians of the estate, or become sureties for the guardianship, their mother, the said *Mary*, as guardian by nature, and as widow of
the intestate, entered upon and took possession of all the real estate; that since the death of their father they have lived with, and been maintained and educated by their mother, and that they believed she had, at all times, so managed, disposed and applied the personal and real estate, and the income and profit, as best to promote the interest of all concerned therein; that their mother, in managing the concerns of the said real and personal estate had, in various instances, from a desire to benefit the estates, intermixed the moneys arising from the personal estate with that arising from the real estate, and applied them to the purchase of new real estate, and at other times applied the moneys arising from the real estate, as if they were a part of the personal estate, so that it had happened, that the accounts had become somewhat intricate. That dower had never been assigned to their mother; and that since her intermarriage with the appellant, *John Wilkes*, it was proper that her dower should be assigned, and the accounts relative to the real and personal estate settled; and that the personal estate, the gains and profits thereof, and the new real estate, should be divided among the persons interested, according to their respective rights.

The answer of the appellants admitted the allegations in the bill, and insisted that the indiscriminate application and intermixture of the real and personal estate became requisite, from the peculiar circumstances of the property, and for the interest of the respondents.

The cause was set down for a hearing on the bill and answer.

On the 6th *June*, 1807, the master to whom it had been referred to ascertain and report the allowances

*IN ERROR.*
.....
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

that would be proper for the maintenance, education, and support of the respondents, reported. 1,000 dollars *per annum*, as a proper allowance for each of the sons, and 800 dollars for the daughter; and that such allowances ought to commence from the 12th *November*, 1806, when the appellants intermarried, which report was confirmed.

After several orders of reference and reports of the master, which, not being satisfactory to the chancellor, an order was made on the 17th of *December*, 1808, directing an account to be stated, and a report made on various points stated in the order. Pursuant to this order a report was made by the master on the 28th of *August*, 1809.

From this report it appeared that the value of the real estate at the time of the death of the intestate, was 194,610 dollars, and at the present time, 247,665 dollars; that 7,760 dollars had been expended in repairs, and 35,405 dollars in improvements; that the personal estate amounted to 82,721 dollars and 45 cents, and the administrator had paid debts to the amount of 41,184 dollars and 72 cents; and that she had received, since the death of her husband, rents, issues, and profits of the real estate, to the amount of 76,906 dollars and 59 cents.

In the accounts, the master allowed the appellant, *Mary Wilkes*, the sum of 21,411 dollars and 23 cents.

Several exceptions were taken to the report by each party. On the part of the respondent; 1. That the master had credited the respondents, 3,500 dollars, for a certain mortgage, which had before been converted into a part of the real estate; 2. That the master had allowed various sums for the board and maintenance of the respondents, which he was not authorized to do; and that the sums allowed were too high; 3. That the master, ought to have charged the appellants with a greater amount of interest.

The appellants objected that they had been charged with more interest than ought to have been allowed;

that the amount of household furniture, and interest thereon, was improperly charged to them; and that they ought to have been allowed a reasonable compensation, by way of commission, for the agency and services of the appellant, *Mary Wilkes*, in managing the real estate while under her care.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

The chancellor, by a decretal order of the 16th *December*, 1809, disallowed the report of the master, and directed a new reference. The material part of this order was as follows:

"That the report of the said master has nowise conformed itself to the terms of reference in the said order contained, but hath totally departed therefrom, inasmuch as the same does not contain a particular specification of the improvements, repairs and expenditures, distinguishing the nature thereof, and whether advantageous or not, which have been made of the real estate of the said *John Rogers*, deceased, since his death, for what reason and for what purpose the same have been made; and inasmuch as the same does not contain a particular account of the nature and amount of the personal estate of the said *John Rogers*, deceased, which have come to the hands of the said *Mary Wilkes*, as administratrix, the yearly income or interest thereof since his death, or the times when the said personal estate came to the hands of the said *Mary Wilkes*, and when such parts as consisted in other things than cash, were converted into money, or might have been so converted with reasonable diligence; and inasmuch as the same does not contain a particular account of the debts and expenses which have been paid by the said *Mary Wilkes*, in a due course of administration, and the times of the respective payments; and inasmuch as the said account, in its general terms, is in many particulars, a departure from the usual and well established mode of accounting in this court. It is therefore ordered, the exceptions of the said parties (the second on the part of the complainants only ex-

IN ERROR.

ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
oiners.

cepted) being disregarded, that the said matter be referred to a master, to conform the same to the directions in the said order of reference contained; and the said second exception on the part of the complainants, which respects the allowance reported by the said master, having been fully debated by the said counsel, and it appearing proper to allow the same;—it is therefore further ordered, that the said master, in his report to be made in the said matter so referred, totally omit and reject all allowances for the maintenance and education of the said complainants. And it is further ordered, that the question of costs on the said exceptions be reserved, and all farther directions till the coming in of the master's report."

From this order an appeal was entered to this court, and the appellants contended, 1. That the master's report ought to have been confirmed, and made agreeable to the exceptions taken by the appellants.

2. That dower ought to have been assigned to the appellant, *Mary Wilkes*, by the court of chancery.

The respondents insisted on the following points.

1. That parents are bound by the law of nature, as well as the municipal law, to maintain their infant children, and that no order can be made for the maintenance of infants out of their own fortune, unless the parents are incompetent to maintain them.

2. That no order can be made for allowance to parents for the maintenance of their infant children for time past; and that every allowance for the future must be founded upon a previous order and report of the master, ascertaining the incompetence of the parents to maintain their children.

3. That the promises of infants to remunerate their parents for their maintenance and education, are not binding; and the law does not raise any implied promise where there is no moral obligation.

4. That the exceptions taken by the respondents were

well founded, and the report ought not to have been confirmed.

5. That as the appellants, having a competent discretion, have acquiesced in the order of reference, and having submitted to account under it, have waived any right to object to the requisition of the order.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

The reasons for the decree were thus assigned by

THE CHANCELLOR. To this report exceptions were taken by both parties.

The estate in this case was of considerable value, and the accounts were said to have been irregularly kept.

If all the parties in this case were adults, chancery would implicitly repose itself on the vigilance of the parties to guard their respective interests, and would not look into the account beyond the points to which its attention was pointed by the finger of a party. But in this case, two of the complainants are still infants, and to guard their interest is peculiarly the duty of the court of chancery; the more so in this case, as there were indications of mere supposititious statements, from the various aspects which the substance of these accounts have successively assumed.

Preliminarily to examining any of the exceptions, it may be necessary to observe, that if all the parties capable of consenting, had come in and admitted that the account was correctly stated, it would not, according to my impression of the duty the court owes to the interests of the infants, have sustained the summary charges contained in schedule F, of " sundry expenses," regularly repeated at the end of every year, without the slightest reference to items, and amounting in the aggregate, to 9,168 dollars and 67 cents, and in the master's report explained, " as principally expended for counsel fees, law charges, clerk hire, &c. which sums appeared from the testimony to have been expended, but could not be spe-

IN ERROR.

ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

cified for what particular purpose, in every instance; owing to the manner in which the books have been kept, these sums having been charged in a general account under the head of the estate of *John Rogers*."

In schedule D. the charges under the general head of improvements and taxes, amount, as added in sche- dule G., to 41,807 dollars and 42 cents.

This species of statement is the more unaccountable, when some of the reasons given in my opinion delivered on the former report, are taken into view. I then ob- served, that,

" The account to be taken does not so conclude the infants, as to prevent them from surcharging or falsify- ing, when they attain their age ; but, *primâ facie*, they are intended to be considered as settled, inasmuch as the master has examined the vouchers of the charges and discharges, and determined on their correctness. In this point of view, the statement is important, and the account ought, from that consideration, to contain so much of the details, as to show the origin of the dif- ferent items composing it, the periods at which the debts of *John Rogers*, the intestate, or those due to him were either paid or received, distinguishing between the principal and interest in each item, so as not to compel a resort to documents, which may not be in the power of either party, and certainly not in the power of the court, after the master has passed upon them, when the infants come in to avail themselves of the saving made to them, after they attain their age.

" In this case, the master has examined the books and vouchers, and stated the general results, instead of details. When these are closed, and the general accounts are admitted on the files of the court, they repel every attempt at a review. No mistake or contrivance, which may have been imposed on the master, can possibly be detected ; the accounting party retaining his books and

vouchers; and no measures can be adopted by the court, to insure their preservation.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

" The effects of these general statements, are strongly exemplified in this case. If the accounts had, in the usual mode, detailed dates and sums, distinguished between the different species of personal property, their nominal amount and actual value, the times when received, and when applied, in discharge of the intestate's debts, and all those, from certain *dates*, extracted from the books and papers of the administratrix, since his death; the omissions, variances and discordant results, presented in this instance, could not possibly have occurred, without affording an easy mean of detection, on the slightest examination.

" In this case, the whole account of the personal property of the intestate, amounting to 82,363 dollars 63 cents, and of debts which the intestate owed at the time of his death, amounting to 42,568 dollars 80 cents, may be comprised, and are nearly comprised, in one page of common writing paper."

The accounts now accompanying the master's report, are as objectionable on all these grounds, as they were formerly; and there is not the least approximation to the line prescribed as a proper one, by any former opinion. In various other respects, the accounts appeared to me not to lead to the proper result; but I mean not to enter into an examination of them throughout.

These remarks are made to show, that travelling through the exceptions made by the parties, would have been a useless labour, incapable of accelerating the cause; as the accounts were so radically defective throughout, that every attempt at correction, by allowing, or disallowing the exceptions, could not possibly contribute to perfect them; for as a restatement must have been unavoidably made, their complexion might be so altered, as either to remove the causes of exceptions, or to multiply them.

*IN ERROR.*
.....
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

The second exception on the part of the complainants, went, however, to the merits, on a very important point to the parties, on which counsel were fully heard, and as it was so presented, it required a decision to give a determinate course to the master's conduct on any future report on the same subject; in the same point of view, it appeared well to consider the charge of the moneys expended in improvements on the houses in *Greenwich* street. [Here his honour stated the different sums as they appeared in the two reports, and remarked thereon.]

To the position, however, that the sums so expended was a beneficial investment for the infants, the court could not possibly withhold its assent.

The second exception on the part of the complainants, respected the education and maintenance of the children of *John Rogers*, the father of the complainants, subsequent to his death, and previous to the intermarriage of the defendant.

This formed an item in the account of 21,411 dollars and 23 cents, for the period of somewhat more than eight years, which elapsed between the death of *John Rogers* and the intermarriage of the defendant.

This exception presented two points for the consideration of the court.

1. Whether it is not a positive duty of parents to educate and maintain their children during their minority.

2. Whether every charge of that kind must not be deduced from a previous order.

The civil law imposes it on the father to educate his son, according to his ability, with all those things necessary for social life; (*Wood's Inst. C. L.* 126.) and Lord *Kaims*, in his *Principles of Equity*, lays it down as a positive duty of parents, to preserve their children from want; and in the case of *Mary Scott* v. *Mary Sharpe*,

(*Home's Prin. of Eq.* 83.) cited by him to exemplify
the doctrine, it is extended to their education to some
sort of business, by which they can gain a livelihood,
or in the alternative, to provide for their subsistence,
even after the parent's death. This may be the *rationale*
of the relation of parent and child, in the abstract.
But our law will not bear out the doctrine on so broad
a scale. The master of the rolls, in the case of *Raw-lins* v. *Goldmass*, (5 *Vez.* jun. 444.) in the *English*
court of chancery, says, " he is afraid, that" by their
*English* law, "they may be brought on the parish;"
and as there is no law here to prevent children from
being left on the town, in case of the death of the pa-
rent, that apprehension may be equally excited here.

In the case of *Jackson* v. *Jackson*, (1 *Atk.* 513, 514.)
the father being competent, the court refused to give
directions as to maintenance; and in the case of *Butler*
v. *Butler*, (3 *Atk* 408.) Lord *Hardwicke* held, that the
law of the land, and of nature, make it incumbent on
parents to maintain their children; and unless the pa-
rents are totally incapable, or bordering upon necessity,
the court will not direct the interest that shall be made
of a contingent legacy, to be applied to that purpose.

In the case of *Andrews* v. *Partington*, (3 *Brown's Ch.
Cas.* 60.) Lord *Thurlow* held it contrary to all rule,
that the interest vested in children should be applied to
their maintenance, in the life-time of the parent, and
ordered a reference to ascertain a parent's ability.

This has been extended to the mother, as well as the
father, who is guardian by nature and nurture. (*Roach*
v. *Garvan*, 1 *Ves.* 158.) On a bill for a legacy, (33 *Car.*
II. *Vent.* 353. *Anon.*) bequeathed by a father to his son,
against his mother and second husband, it was held, that
the mother ought to maintain her child, and the legacy
was not diminished.

In the case of *Billingsby* v. *Cretcher*, (1 *Brown's Ch.*

*IN ERROR.*
.....
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

*Rep.* 268, 269.) the mother, and her husband, claimed an allowance for the maintenance of a child by her former husband; it was admitted, in argument, that the mother was under a natural obligation to maintain her own offspring; and *Ashhurst*, Commissioner, said, " if the mother continued unmarried, I should have some doubt, but since her marriage, she is entitled to an allowance, otherwise it would be compelling the second husband to keep the children of the first;" and *Hothcm*, Commissioner, adds, " it is wise to let the children have part of their fortune applied to their education; the discretion exercised must be under the view of the court."

In *Lady Shaftsbury's* case, (*Prec. in Ch.* 558.) the allowance is only mentioned incidentally, but as the allowance is connected with the appointment of a receiver, it was, probably cotemporaneous; but in that case, an extraordinary sum had been expended, in consequence of the sickness of the earl, who was the ward, and that was sent to the master. Besides, as the question on it arose on an anticipated payment before the quarterday, *when it became payable,* and determined on that point, it shows decisively, that the order for the allowance had preceded it.

The allowance for the maintenance of three daughters, (*Chaplin* v. *Chaplin,* 3 *P. Wms.* 365.) was claimed by the representatives of their mother, who had died insolvent; the mother, it appeared, had a plentiful jointure, out of which the daughters were maintained; but having become entitled to a considerable property, before the mother's death, it was insisted, that that circumstance was a ground for a liberal allowance.

This imperfect report of the case, merely decides that, until the contingency occurred, which increased their income, it should not exceed the income they possessed before.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

In the case of *Lord Petre*, (7 *Vez.* jun. 403.) the allowance was permitted to have a retrospect to the death of his father; but it does not appear on what principles; it may have been on the ground, that the time was short, and the expense incurred, by engaging a tutor, master, and servants. It affords no ground to take it out of the general rule. (9 *Vez.* jun. 288. and cases cited.)

There are other cases, on the subject of settlements and express provisions for maintenance, but none which I have been able to discover, to vary the judicial ground I have laid down. I am not prepared to say, with Lord *Hardwicke*, that total incapacity, or a bordering upon necessity, are to be the tests of allowances of this kind. On the contrary, I think it a wise policy, and such a one as the court ought judicially to aid, to anticipate a part of the wealth of infants, to secure a good education; so amply remunerated, by the value it stamps on the remainder; but the policy which dictates the allowance, ought certainly to combine the precautions necessary to secure its proper application.

As to the second point. None of the cases adverted to, contain an intimation, that a retrospective allowance has ever been made. I recollect to have seen a case, in which the time past was considered as too trifling to induce a reference, and allowed, on that ground. And in the case of *Hill* v. *Chapman*, (3 *Brown's Ch. Cas.* 231.) application for an allowance, for the maintenance of a child was made, from the preceding christmas on showing that the father was a lieutenant, on half pay, and that he could not maintain his infant child.

In that case, Lord Ch. *Thurlow* said, the maintenance can never be for a time past; the allowance cannot be ordered for a past time. The master, if he sees the pressure of the parent, may consider it in the rate of the allowance, but cannot make an allowance for the time past.

IN ERROR.
·····
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

The reasoning in this last case, and the expedient sug-
gested to escape from the rule, shows, that it was con-
sidered as a well settled and rigid one, and that no retro-
spective allowance could be made.

In this case, an allowance has been made, after the
intermarriage of the defendants, liberal beyond any other
which has fallen under my observation in this court, on
special circumstances, disclosed by the master. That al-
lowance is not affected by the present account.

It did not seem to me necessary to examine or decide
whether a mother, who changes her condition, by marry-
ing a second time, completely extinguishes her duty of
maintenance of her children, or devolves it on her second
husband. If she extinguishes the duty, it is, it seems to
me, a solitary instance in which a positive duty can be
so extinguished.

As parents are, by the laws of nature and of the state,
bound to maintain their children, though fathers, at least,
have an incontrovertible latitude in the mode of doing it,
I thought that I ought to assume it as conclusive, that as
long as they do not apply, they were not under that kind
of pressure, which allowances of this nature are calculated
to remove; that when they do apply, they are content to
relinquish such a portion of their parental authority, as
may be necessary to enable the court to direct the fund
allowed, to the best advantage of the infants, by exer-
cising a discretion on the occasion.

It was not probable, in this case, that the mother, amply
provided for as she was, would ever have thought of
claiming this allowance, if no new interests had been
introduced into the family. The new relation in which
she is now placed, cannot possibly enlarge her rights,
subsisting anterior to her remarriage; and if at that time,
it was her duty to educate and maintain her children,
the discharge of that duty cannot, in any event, be a
subject of remuneration now.

*IN ERROR,*
.....

ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

The exception to the master's report, as to this point, was, therefore, allowed; but as for the reasons already mentioned, I declined entering upon an examination, of the other exceptions, I thought it would be well to reserve the question of costs; for as neither the order of reference, nor the former opinion, expressed by me had been attended to, in making up the report, and thus a useless expense incurred, it would seem, from the common act of the parties, the question of costs was a proper subject for ulterior consideration.

*Troup*, in behalf of *John Rogers*, one of the respondents, who had now come of age, filed a paper, in which he admitted the facts contained in the appellants' petition, and disclaimed.

*Harison*, for the appellants. There is no imputation against the conduct of Mrs. *Wilkes*. The master, in his report, states, that she has managed the estate for the best interest of her children.

The first proposition of the respondents is, that parents are bound by the law of nature as well as the municipal law, to maintain their children. This rule is just and undeniable. It is a moral duty; and the obligation is founded on the weakness and wants of children, who, without the assistance and support of their parents, might suffer and perish. But this rule is modified by circumstances. If children have great estates descended to them, in their own right, and the parents have but little property, neither law nor reason require the parents to expend their own fortune in the maintenance of their children. The proposition, therefore, as laid down by the respondents, though true in the abstract, or as a general rule, cannot apply in a case where children are not only above all want, but have an abundance. Suppose the mother, in the present case, instead of continuing the establishment of her deceased husband, and

IN ERROR.

ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

maintaining the children in the style to which they had been accustomed in the life-time of their father, had merely furnished them with the necessaries of life, what court would have had a right to interfere? True, it is said in the books, that parents must maintain their children; but it is a duty which is to be enforced, or not, according to circumstances. A court of chancery seldom, if ever, interferes, unless when an account is taken. The power of the *English* court of chancery originated from the royal prerogative, the king being the guardian and superintendant of infants, idiots, and lunatics. The exercise of this power in the chancellor has grown into a technical system, modified by the laws of the country. Distinctions have been made between father and mother, and as to estates lineal and collateral. The general rule is, not to let the infant's estate be broken in upon; but to do so, in certain cases.

All the cases in the books, except that of a collateral relation, where the court has refused to apply the infant's estate to his maintenance, are where there is a father living, and of sufficient ability to maintain his child.[*] The case of *Andrews* v. *Partington*,[†] was that of a father; but in *Host* v. *Pratt*,[‡] the solicitor-general stated to the court, that Lord *Thurlow*, afterwards, changed the opinion given by him in *Andrews* v. *Partington*, and made the order. In *Billingsley* v. *Crichett*,[§] a mother who had married a second husband, was held entitled to an allowance out of the estate of her children for their maintenance. The counsel in that case admitted, that where the mother applied for an allowance, the court would not refer it to a master to inquire as to her ability to maintain her children.

In Lady *Shaftbury's* case,[¶] the mother was allowed a sum for extraordinary expenses during the sickness of the son, over and above his quarterly maintenance. In *Ex parte Lord Petre*,[**] the master's report, allowing Lady *Petre* 1,600l. a-year for the education and mainte-

[*] 1 Atk. 514. 3 Atk. 60. 3 Ves. jun. 733.
[†] 3 Bro. C. C. 59, 60.
[‡] 3 Ves. jun. 760. 733.
[§] 1 Bro. C. C. 868.
[¶] Prec. in Ch. 559.
[**] 7 Ves. jun. 403.

nance of her son, though considered as a large allow- IN ERROR.
ance, was confirmed by the chancellor.

In *Collier* v. *Collier*,* where 400*l.* a year was given
by will to the mother, in addition to her marriage settle-
ment, for the *maintenance* of the children, she was held
not to be chargeable with the expense of their education
and maintenance *at school;* and she was allowed a further
sum for that purpose, out of the estate of the children.

ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

° 3 Ves. jun. 28 ,,

2. But it is said, that no order for maintenance can
refer to what is past. But the rule in equity is, what
chancery can command to be done, it will approve when
it is done.† If the party does no more than what the
court, on application, would have directed to be done,
it will approve and confirm. If the parent has been
guilty of any mismanagement or misconduct, the court
can disallow any sum for maintenance.

† *Gilb. Eq. Rep.*
11. 2 *Eq. Cas.*
*Abr.* 758. in
note.

But the very order, in this case, under which the
master has made his report, directs him to inquire what
sums the appellant, Mrs. *Rogers*, had expended for the
maintenance of the children, and what ought to be al-
lowed; which plainly shows, that, at that time, the idea
that no reference was to be had to the past, was not en-
tertained. The case of *Chaplin* v. *Chaplin*,‡ decided by
Lord Chancellor *Talbot*, is a strong case to show that
allowance may be made the mother for maintenance in
time past. To the same effect are the cases of *Faukner*
v. *Watts*,§ and *Collis* v. *Blackburn*.¶ Indeed there is
not a decision to be found to the contrary, until the time
of Lord *Thurlow;* and he, afterwards, as appears from
the case of *Hughes* v. *Hughes*,** allowed maintenance
for time past. And in *Reeves* v. *Brymer*, and *Sherwood*
v. *Smith*,†† it appears, that the rule laid down by Lord
*Thurlow* was abandoned by his successors, and it has
been the practice since to allow maintenance for time
past.‡‡

‡ 3 *P. Wms.* 365.

§ 1 *Atk.* 405.408.
¶ 9 *Ves.* jun. 470.

** 1 *Bro. C. C.*
387.

†† 6 *Ves.* jun. 453.
and 454.

If Mrs. *Wilkes* is not to be allowed for the sums she

‡‡ See also 9 *Ves.*
jun. 285. and 13
*Ves.* jun. 321.

IN ERROR.
·····
ALBANY,
Feb. & March,
1810.
⌄
WILKES and
WIFE
v.
ROGERS and
others.
———

has expended in the maintenance of the children, her whole share in the personal property will be exhausted, and she will be in debt to the estate, while the property of the children will be increased, by her management, above 50,000 dollars.

The next objection is, as to the *quantum* of the allowance. But there is no evidence of its being too large; and, considering the circumstances of the estate, its magnitude, and increasing value, the allowance cannot be considered as unreasonable. It is also objected, that interest has been charged on this allowance; but as Mrs. *Rogers* is charged with interest on all she has received, she ought to be allowed interest on all she has paid. If there are any errors in the computation, that is not a sufficient reason for sending back the report. The principle of calculation was to be settled by the chancellor, and the master directed to make it accordingly.

Again, it was an express object of the bill, to have the dower of Mrs. *Rogers* assigned, and the master has reported what she is entitled to receive; and no objection has been made. Dower may be decreed to be allotted, and set out by the master.*

* *Dick. Rep.* 795.

*Baldwin* and *Van Vechten*, contra. The order of reference to the master has not been complied with, and that was a sufficient reason for the chancellor to send it back. A variety of particulars, about which the master was required to report, have not been taken notice of by him. [Here the counsel went into a minute examination of the report, and of the exceptions to it.]

Both parties have excepted to the report. How then is it to be confirmed? There are matters to be ascertained by the master. It is not, therefore, a proper case for an appeal. This is a bill filed by infant children against their mother. It could not, therefore, be a bill for an assignment of dower.

It is not correct, that Mrs. *Wilkes* will have expended her share of the estate, if the sums reported by the master are not allowed to her. She has expended 21,000 dollars, and her share of the rents is above 20,000, besides her third of the personal property, amounting to about the same sum.

Then, as to the allowance for the maintenance of the children. Mrs. *Rogers* had, at the death of her husband, arising from her share of his estate, an income amounting to about 4,400 dollars. It is a settled rule in chancery, that an allowance cannot be granted, for the maintenance of children, out of their estate, when the parent has a competent estate for that purpose.

By the law of nature, parents are bound to maintain and educate their children. The obligation is the same as it regards father or mother. Indeed, it is stronger in case of the mother. In the case of *Jackson* v. *Jackson*,* Lord *Hardwicke* refused an allowance, where the father appeared competent. In the case of *Fawkner* v. *Watts*,† the master of the rolls said, that every father and mother was, by the law of nature, under an obligation to maintain their own children; but that the rule might be varied by circumstances; as in case the parent should be in low condition, the child might be ordered to be maintained out of a provision left by a collateral relation. In the case of *Butler* v. *Butler*,‡ it is true, the chancellor speaks only of fathers, as distinguished from collateral relations. It was ruled, in the case of *Darley* v. *Darley*,§ that a father could not make use of a legacy left to a child by a relation for the maintenance of such child, but must provide for him out of his own pocket. In *Roach* v. *Garvan*,¶ the chancellor said, though he could not allow the mother any thing, by consent of the children, yet he would allow a liberal maintenance to the children out of their estate, that they might assist a parent in distressed circumstances.**

If the cases cited on the other side are examined, it will

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

* *Atk.* 513, 514.

† 1 *Atk.* 406, 408.

‡ 3 *Atk.* 60.

§ 3 *Atk.* 398.

¶ 1 *Ves.* 156. 160.

** See also 1 *Bro. C. C.* 387.
3 *Bro. C. C.* 416.
2 *Bro. C. C.* 334.

IN ERROR.

ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

be found that no allowance has been made to a parent, where the parent was of sufficient ability to maintain the children; nor has it ever been allowed, for a time past, unless under very peculiar circumstances.

The only question, then, in the present case, is, whether Mrs. *Rogers* had a sufficient estate to maintain her children; and her delay in making any application to the chancellor for that purpose, until after her marriage with the appellant, Mr. *Wilkes*, is a proof that she thought herself competent. The bill is, in fact, at the instance, and for the benefit of Mr. *Wilkes*.

*T. A. Emmett*, in reply, entered into a particular examination of all the accounts annexed to the master's report, to show that they were correct, and that the conduct of Mrs. *R.* had been highly advantageous to the estate.

He observed that the moral obligation of the parent to take care of the child, was founded on its wants and weakness. The parent is bound to take care that his child does not want sustenance or education; but where a child has ample means for its own sustenance and education, there is an end of the obligation of the parent. The paternal fortune, in general, is the *primary* fund out of which the children are to be maintained and educated. This fund is under the absolute control and direction of the father. He may give to one child a better education and less fortune than another. The father may be considered as a trustee for his wife and children. The property which children may have in their own right, is a *secondary* fund; and a court of chancery will not allow maintenance out of the secondary, without first inquiring into the state of the primary fund.

When the father dies, the primary fund is divided among the wife and children; and the children then become possessed of their portion of that fund, for their maintenance and education; and is it just that the

IN ERROR.

ALBANY,
Feb. & March,
1810.

WILKES and WIFE
v.
ROGERS and others.

mother should give up her portion of the fund to support the children, when their own portion is amply sufficient for that purpose? It is from the principle which has been stated, that a distinction has arisen between the case of a father and that of a mother. In case of a father, an inquiry is first made into his ability, or the state of the primary fund, before an order for maintenance is given; but in the case of a mother, such order is made, of course, for the maintenance of the children out of their portion of the fund.

If we consider the nature and force of maternal feelings, it will be evident that it can never be necessary to make an order of reference in the case of a mother. Where a mother possesses an ample fortune of her own, and her children derive nothing from their father, it cannot be supposed that the mother will withhold an adequate maintenance and education from her children.

It was a caprice of Lord *Thurlow*, not to allow maintenance for time past; and the rule he laid down has been uniformly disregarded by his successors, as unreasonable and unjust. Every guardian in socage must take care not to do any thing which a court of chancery would not consider reasonable and proper; but if what is done be fit and right, the court will approve it.

This was an amicable suit; not for the benefit of the husband, but for the mother and children; that their respective rights might be settled, that they might not be called on hereafter to unravel accounts, and that the mother's dower or share in the estate might be separated from that of her children.

YATES, J. This cause comes before the court, on an appeal from the decretal order of the court of chancery, of the 16th of *December*, 1809, disallowing the report of the master, and directing a new reference, and that the master should totally omit and reject all allowance for the maintenance and education of the respondents.

*IN ERROR.*

ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

Two questions are presented here; 1. Whether an allowance for the maintenance and education of the respondents can be made for the time past? and if so, 2. Whether a new reference was necessary.

It is, undoubtedly, the duty of parents to provide for their offspring, without creating an obligation on the part of the children to remunerate; and this can only be deemed a compliance, on the part of the parent, with the dictates of nature. It must, therefore, be admitted, that in most instances, the allowance now sought for would be illegal and improper. An opulent parent, after his children arrive at full age, could not be allowed to charge them with the expenses of their maintenance and education, out of their separate property. Although this is conceded to be law; yet cases exist which are exceptions to this rule, and must frequently occur, with regard to the mother. I cannot, however, assent to the distinction, in so full an extent as the counsel on the part of the appellants have attempted to establish it, that the obligation of maintenance and education of children is, at all times, only applicable to the father. On the contrary, if the mother possesses an ample fortune, in her own right, the natural situation in which she is placed, according to my view of the subject, renders it equally obligatory on her to provide for her offspring.

In the case of *Fawkner* v. *Watts*, (1 *Atk.* 405.) the master of the rolls, says, I shall not dispute but every father and mother, by the law of nature, is under an obligation to maintain their own children; but yet, this may be varied by circumstances; for suppose the father or mother should be in a mean or low condition in the world, the court will order, especially in the case of a mother, that the child should be maintained out of a provision left it, even by a collateral relation.

In *Fonblanque*, (page 238. in a note,) it is stated, that as the court will allot maintenance for the infant, out of the produce of his estate, it will also, in so doing, consider

the circumstances and state of the family. As when there is an elder son, an infant, and other younger children, who have no provision, the court will allow a more ample maintenance to the guardian of the eldest son, by which the younger children may be maintained; and, as the court will, in some cases, order maintenance where none is directed, so in other cases it will refuse to apply the fund for maintenance, though so directed, if the father be living, and of sufficient ability to maintain his child; and in some cases the court will allow the principal to be broken in upon. In the case of *Jackson* v. *Jackson*, (1 *Atk.* 513.) the lord chancellor refused to give direction, the plaintiff appearing to be sufficiently competent; and declared, that whether an infant should have an allowance of maintenance, during the life of the father, depends always upon the particular circumstances of the case.

*IN ERROR.*
.....
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

In the case of *Collier* v. *Collier*, (3 *Ves.* jun. 38.) Sir *George Collier*, by his will, gave his wife 400*l.* a year, in addition to 500*l.* to which she was entitled by marriage settlement, to be paid half yearly, in consideration of the expense and care she should incur, in the maintenance of the children; she was, notwithstanding, allowed for their education and maintenance abroad; and the lord chancellor there says, it would destroy the purpose of the legacy; the testator could not have meant, that she would be laid under a temptation to spoil the boys, by keeping them at home.

From the cases mentioned, and several others, cited in the argument, I think this doctrine is manifestly established, that the allowances to infants, for their maintenance and education, can only be made according to the circumstances attending each particular case.

The next inquiry, therefore, is, whether the facts disclosed in the case now before us, will warrant the allowance as stated in the master's report.

*IN ERROR.*

ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
*v.*
ROGERS and
others.

If the widow had, immediately on the decease of the husband, claimed her share of the personal estate, and an assignment of her dower, she would, after the payment of all the debts, have been possessed of upwards of 18,000 dollars, personal property, and an annual income of about 3,000 dollars, out of the real estate. Had she been regardless of the prosperity of her children, she might easily, out of this, have satisfied their absolute necessities, and suffered her own property to accumulate. To drive a mother to such an extremity, to prevent the absolute ruin of her own estate, is too mercenary a principle to suit the genius of our equitable jurisprudence; besides, the consequence would be, that the more extensive the property left the infants, the greater would be the probability of a neglected education.

But this was property belonging originally to the husband, whose obligation to provide, extended to his wife as well as children; and after his death, by the operation of law, she became exclusively entitled to her part, and the children to their proportion. It may, therefore, well be questioned, whether the obligation to provide, on the part of a mother so situated, does continue, if even she had immediately insisted on her legal rights; this, however, she did not do; it is, consequently, out of the question. Instead thereof, and of being altogether occupied to increase her own interest, she administers on the estate of her husband, bestows all her time and attention in discharging debts, making improvements, and fulfilling contracts, entered into by the intestate; and by judicious and prudent management, equally benefits all the parties interested. The extraordinary care and attention thus bestowed, is not denied; on the contrary, it is admitted that the whole of the improvements made by her, have been beneficial to the heirs; and yet it is contended, that all this does not alter her situation. She is to be made responsible to her children, for the principal and interest of two thirds of the

personal property, and the annual proceeds of two thirds of the real estate, and they are not to be at the expense of their own maintenance and education, but must be enriched at the expense and ruin of their mother. Such a monstrous doctrine cannot be tolerated. The disinterested conduct of the mother, in this instance, entitles her to protection; and, in my opinion, she ought to have been allowed for the maintenance and education of her children.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.
WILKES and
WIFE
v.
ROGERS and
others.

The case of *Aynsworth* v. *Pratchelt* (13 *Ves.* jun. 320.) will well warrant this allowance for time past. There the testator, by his will, directed 1,000*l.* to be paid his daughters, when 21 years of age, and gave 100*l. per annum* to his wife. The prayer of the petition was, that the petitioners may be declared, under circumstances, entitled to farther maintenance, as well for the time past, since the death of the father, as to come, and a reference to the master for that purpose. The master of the rolls said, upon the authorities, the order might be made. In the present case, the mother has been wholly devoted to the best interests of her children; evidently, without a design to any exclusive private emolument. She ought, therefore, to be placed on such a footing, that those benefits might enure to the mutual advantage of all the parties; and this cannot be effected, without an allowance for maintenance and education, since the decease of the father.

As to the exceptions, on the part of the respondents, I would observe, that I cannot discover, that crediting the appellants with 3,500 dollars, the amount of *Titus's* bond and mortgage, subsequently, by order of the court of chancery, converting it into real estate, for the general benefit of all the parties, will produce a result, as to the extent of interest therein, to either party, different from what would have been the case, if the order had not been made.

*IN ERROR.*
·····
ALBANY,
Feb. & March,
1810.
WILKES and
WIFE
v.
ROGERS and
others.

The demand ·of interest on the whole amount of the estate, without crediting Mrs. *Wilkes* with her proportion, is unreasonable, and manifestly unjust, and ought not to be allowed. I do not think it necessary to analyze all the facts, set forth by the master in his report, as appealed from. I shall only state, that the allowance from the 12th of *November*, 1806, to the 1st of *May*, 1807, having been before made, for the support and maintenance of the respondents, ought to be rejected.

My opinion, therefore, is, that the order of the court of chancery, of the 16th of *December* last, be reversed; and that the master's report, of the 28th of *August* last, on being altered, as to the allowance for support and maintenance, above mentioned, be confirmed; that the cause be remitted to the court of chancery; and that his honour the chancellor be directed to decree an account and distribution, according to the report; and also to assign to the said *Mary Wilkes* her dower in the real estate, specified for that purpose in the report.

SPENCER, J. The object of the bill filed by the respondents, was for the purpose of settling the accounts between the parties, in relation to the management, by Mrs. *Wilkes*, of the estate, real and personal, of the intestate *John Rogers*; for a division of the property, after all just allowances, according to the respective rights of the parties; and for the assignment of dower to Mrs. *Wilkes*. The bill, so far from charging Mrs. *W*. with improper management of the estate, explicitly admits that she has conducted herself so as to promote the interest of all concerned.

The answer admits the allegations of the bill, and joins in the prayer for the settlement of accounts, and the assignment of dower. After several former references, a new reference was directed by the court of chancery, on the 14th of *December*, 1808.

4

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

On the coming in of the report of the master, under this last reference, each party took exceptions; and on a hearing, the chancellor disallowed the report of the master, rejected all allowance for the maintenance, by the mother, during her widowhood, and for the education of the respondents, and directed a new reference. On this last order, the appellants have appealed to this court.

Before the merits of the case are considered, it seems to me proper to examine whether the court of chancery could set aside the report of the master, except for the causes set forth in the exceptions filed by the parties; for by a reference to the new order, referring the case back to the master, it will be seen that all the exceptions, except the second, on the part of the complainants, which relate to the allowance to Mrs. *Wilkes* for the maintenance and education of the respondents, prior to her intermarriage with *John Wilkes*, have been disregarded by the court of chancery. This inquiry becomes the more necessary, because the first ground on which the new reference has been made, is, " that the report does not contain a particular specification of the improvements, repairs, and expenditures, distinguishing the nature thereof, and whether advantageous or not, which have been made of the real estate of the intestate," &c. and the master, in his report, states, " that schedule A. contains the estimate of the value of the improvements and repairs made on the real estate, as far as the same could be ascertained from the testimony and estimates of the witnesses." We see, then, that the new order refers the matter back for a discrimination, which the master says cannot be made, and for a matter not excepted to by the respondents.

It appears to me that exceptions partake of the nature of special demurrers; and if reports are erroneous, the party must put his finger on the error. When he does so, the parts not excepted to are admitted to be correct, not only as it regards the principles, but as relates to

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

the evidence on which they are founded. It is my opinion, that the court of chancery cannot set aside a report upon exceptions not taken, and require further proof, when the parties whose interests would excite them to make every possible objection, are satisfied. It was suggested, that this being the case of infant respondents, the chancellor, as their guardian, was bound to see that justice was done to them; and that in this case he might refer a case back to the master, if he was dissatisfied. I cannot assent to this proposition; the chancellor, it is true, has a right to appoint guardians of the persons and estates of infants ; and he is to see that justice be done them. But when he has committed the guardianship, and a suit arises in relation to the estate of an infant, his judicial functions, in the progress of that suit, are to be exercised in the same manner as if it were a suit between adults. He cannot act as judge and guardian at one and the same time. I am, for these reasons, perfectly satisfied, that the report of the master of the 28th of *August*, 1809, must stand, unless the exceptions taken to it by the respondents are valid.

The first is, that the appellants have had credit for 3,500 dollars, the amount of *Titus's* bond and mortgage to Mrs. *Wilkes*, when the bond and mortgage have, since they were delivered up to the respondents' guardian, been converted into real estate, for the general benefit of the respondents and appellants. This objection will appear frivolous, when it is recollected that Mrs. *Wilkes* stands debited with all the money she ever received, out of which she lent *Titus* this 3,500 dollars. When, then, she gave up the security for this money, and devested herself of it, she was entitled to a credit for it. The change of the security, effected by a foreclosure of the mortgage, does not alter the rights of the parties; she is entitled to her one third of the estate, and the respondents to their two thirds. The subsequent proceedings leave the rights of the parties unimpaired.

The second exception is against the allowance made *IN ERROR.*
.....
ALBANY,
Feb. & March,
1810. by the master for the maintenance and education of the children, during the time of Mrs. *Wilkes's* widowhood, on the ground that she is entitled to no allowance; and on the ground also, that interest has been calculated on the allowance, and that it is too high. The chancellor has sanctioned the validity of the exception, and has refused any allowance for the support and education of the children.

WILKES and
WIFE
v.
ROGERS and
others

I have examined the cases cited by the chancellor, and by the counsel, and am perfectly satisfied that they do not warrant the rejection of this allowance.

The cases cited are principally where the father has applied for an allowance out of the estate of his children, for their maintenance and education, and where they had estates given them from another quarter; and even in those cases, allowances have been made, if the circumstances of the father were such as seemed to require it. There is no case like the present, where the father has died intestate, and where the fortune of the mother and children is derived to them from the same source and at the same time.

In the present case, the yearly income of the estate of the infants is more than adequate to support them, without breaking in on the principal; and it appears that the income of the mother is not sufficient to support herself and her children in the manner which their fortunes entitle them to be supported and educated. Hence it follows, that to oblige her to maintain and educate her children out of her own estate, would be to destroy the very fund which the law has given her for her own separate use, and to leave that of the children not only untouched, but rapidly accumulating. The law cannot coerce a parent to do more than to keep his or her child from becoming a charge on the town. An unmarried mother can be obliged, if of competent ability, to save the town from supporting her children; but beyond this the law does not go. This case affords the strongest

IN ERROR.
·····
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

argument for saying that the mother who has only taken out of the fund which the father held for his wife and children, the part allotted by law to her, shall not have that fund burthened with the maintenance and education of her children, who have also received the part allotted by the law to them, and which is abundantly sufficient. It is impossible to lay down any general rules upon this subject; and I content myself with saying that, in this case, the rules of equity require, that the mother should be compensated.

I perceive no objection to the allowance of interest to the mother. It operates, in this case, as an offset; the mother being charged with interest for what she has received. I am satisfied too, that the amount allowed is reasonable, under the circumstances of the case; but if the respondents wish a further investigation on that point, I am content to leave the sum to be liquidated by the court of chancery. It is admitted that the master has included a period from the 12th of *November*, 1806, to 1st of *May*, 1807, for which Mrs. *Wilkes* had been allowed maintenance. This is a mistake, and must be rectified. As to the objection that an allowance cannot be made for past time, the respondent's counsel appeared to abandon it. The decisions are, conclusively, that an allowance may retrospect. Lord *Thurlow*, who first laid down the rule that allowances should not be for time past, stands alone. Those who went before, and came after him, upon solid and just principles, made no distinction between the time past and the time to come.

The third exception relates to the interest. Both parties have objected to the mode of computing it. The respondents, if I understand their counsel, suppose that Mrs. *Wilkes* should be charged with interest, not on two thirds of what she received, but on the whole amount; because she had no right in the fund until it was distributed. This objection is a two-edged sword; and if

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

there is any justice in it, it would excuse her from any interest. If she is chargeable with interest, it must be for the benefit of the children; and their right to exact interest stands on the same footing as her's to resist it. On the one third, their right in the fund is as incomplete as her's. The objection is a subtle one, unfounded in principle, and unjust in the extreme.

My opinion is, that the order appealed from be reversed; and that the master's report, of the 28th of *August*, 1809, stand confirmed, except so far as relates to the period, for which the appellants have been allowed, for the support and maintenance of the respondents, from the 12th of *November*, 1806, to the 1st of *May*, 1807; and that the allowance, for that period, be deducted.

I have not noticed the exceptions to the master's report, filed by the appellants, because they were lightly urged, and are, I think, untenable.

The rest of the court being of the same opinion, it was, therefore, ORDERED, ADJUDGED, and DECREED, that the order of the court of chancery be reversed; and that the report of the master, of the 28th of *August*, 1809, stand confirmed, except, that the allowance for the maintenance and education of the respondents, *John Rogers*, *George P. Rogers*, and *Mary Rogers*, from the intermarriage of the appellants, on the 12th of *November*, 1806, be rejected, inasmuch, as that allowance was admitted by the appellants to have been made by mistake; and, except the interest account between *Mary Wilkes* and the respondents, *John Rogers*, *George P. Rogers*, and *Mary Rogers*, in relation to the personal estate: and it is further ORDERED, ADJUDGED, and DECREED, that his honour the chancellor, after such modifications of the master's report, shall decree an account, and distribution between the appellants and the respondents, according to the said report so modified; and shall

*IN ERROR.*

ALBANY,
Feb. & March,
1810.

WILKES and
WIFE
v.
ROGERS and
others.

also assign, to the said *Mary Wilkes*, her dower, on real estate, specified for that purpose in the report. And it is further ORDERED, ADJUDGED, and DECREED, that the appellants convey to the said respondents one undivided fourth part of the farm at *Croton*, mentioned in the master's report to have been purchased by the said *Mary Wilkes*, with the moneys belonging to the estate of *John Rogers*, deceased, since his death, free from any acts done, or suffered, by the appellants, or either of them, to defeat or encumber the title; and that the proceedings, in this cause, be remitted, &c.

Judgment of reversal.