CHENANGO COUNTY.—HON. W. F. JENKS, SURROGATE.—February, 1883.

GLADDING V. FOLLETT.*

*In the matter of the judicial settlement of the account of* ALBERT F. GLADDING, *as executor of the will of* ERNESTINE R. FREEMAN, *deceased.*

A married woman is not liable during the lifetime of her husband, for the support or education of an infant child of the marriage. The obligation to support an infant child is by virtue of the common law, and rests only upon the father. Where the infant has property, even the father's obligation has in practice become considerably relaxed.

Under title 6 of chapter 18 of the Code of Civil Procedure, containing "provisions relating to a testamentary trustee," a Surrogate's court has all the powers of a court of equity, in respect to such an officer.

Where the executor of a will, who is also a testamentary trustee thereunder, is accounting before the Surrogate's court in the former capacity, that court may proceed, under § 2812 of the Code of Civil Procedure, to pass upon a claim preferred against him in the latter capacity, provided all the parties in interest are before the court, and have been heard, and the accounting in fact involves all which has been done by him in either capacity.

Testatrix, by her will, devised and bequeathed the residue of her estate

---

* At a general term of the Supreme court, in the third department, held May 2nd, 1883, present Hon. WILLIAM L. LEARNED, Presiding Justice, and Hons. A. BOCKES and DOUGLAS BOARDMAN, Associate Justices, the decree entered upon the Surrogate's decision in this case was affirmed, the following opinion being delivered :

*By the Court:*—We are fully satisfied with the decree rendered by the

to her executor, in trust, to take possession of."and invest the same as he deems advisable and appropriate, and use the income thereof *in his discretion* for the education and support of" L., an infant daughter of her cousin, until she became of age, and then transfer to her the principal fund with "all increase or profits therefrom." It appeared that testatrix knew that the infant's father was financially embarrassed, and unable properly to support and educate his child. The executor and trustee contended that, by the terms of the will, he was invested with a discretion to use, or refuse to use, the income of the fund, or any part thereof, for the purposes specified.—

*Held*, that the trust was imperative, as respected the trustee's duty to use the income for such purposes, and that the discretion extended not to the giving or withholding, but only to the manner of giving.

Authorities in respect to the question of a judicial allowance, to the parent of a child having an estate, out of the same, for the maintenance and education of the latter—collated.

Wilkes v. Rogers, 6 *Johns.*, 566—followed.

HEARING of objection, by executor and testamentary trustee, on the judicial settlement of his account, to the allowance of claim, presented by Louisa Frances Follett, who was a cousin of testatrix and mother of Louisa F. Follett, an infant of the age of thirteen years, for moneys paid and expenses incurred in respect of the support, maintenance and education of that infant. The Surrogate, after hearing counsel for the respective parties, made and caused to be filed his conclusions of fact as follows:

First. Ernestine R. Freeman made her will on the 23rd day of October, 1876, and soon thereafter died; by which will she made Albert F. Gladding, executor and trustee.

Surrogate in this matter, and with the judicious opinion which he has given.

We have only to add that the Trustee seems to have had no good reason to take this appeal; since the infant, who appeared by the special guardian, makes no objection; nor does her mother who, under a certain contingency, may be entitled to the principal of the estate. All the parties beneficially interested are therefore satisfied.

Second. This will was proved, and said executor and trustee entered upon the performance of his duty thereupon.

Third. He received property and made payments as set forth in his final account.

Fourth. He has paid to or for the infant *cestui que trust* the sum only of $128.40, as set forth in Schedule "E" of his account.

Fifth. The father of Louisa F. Follett is insolvent, and has been for seven years last past, and is unable to provide means for the support of the said legatee.

Sixth. The mother of Louisa F. Follett, the legatee, has property sufficient from which to support said infant, and has provided for the infant her board and maintenance since the death of Ernestine R. Freeman, except that John R. Conkey has furnished some moneys for the clothing, schooling, etc., of the child, all necessaries, for which he has assigned to the mother of said infant his account, and the same constitutes part of the claim in this case, and, except the items in Schedule "E," of the account furnished by the executor.

Seventh. The trustee and executor has refused to pay these claims, holding that the mother is able to pay for the support of the child and that it is her duty to do so.

Eighth. He has, of interest earned upon the funds of the estate beyond what has been expended, more than sufficient to satisfy the claim presented in this proceeding.

The Trustee is protected by the order of the Surrogate. He probably had the right to appeal in the interest of a proper care of the trust estate. But unless there was reason to think that the interests of the *cestui que trust* were not properly presented by the special guardian, there would seem to be no reason for an appeal by the Trustee.

Ninth. The supporting of the child by her mother, and the furnishing of the supplies by John R. Conkey, were not at the request of Albert F. Gladding.

Tenth. The executor came into this court to have his account settled as executor, in this proceeding ; and, upon the hearing, the said claim was presented, and this court asked to order its payment out of the trust funds of the estate. It was conceded the bills were reasonable in amount and for the benefit of the infant in her support and education:

And his conclusions of law, as follows :

First. That the trust created by the will is *imperative* that the income of the trust fund be *used* for the purpose stated ; and that the *discretion* of the trustee is confined to the *manner* in which it shall be used.

Second. That this court has jurisdiction on this accounting, to direct the payment of the claim presented by Louisa F. Follett , all the parties in interest being before the court, and having been fully heard upon the questions involved.

Third. That the mother of said legatee, although able, is not legally bound to support the child, she not being a pauper. The father being alive but unable, the mother has the right to insist that the income of the trust fund shall be used for the support and education of her child.

Fourth. It being conceded that the sum claimed has been expended by the mother for the benefit of the in-

The decree should be affirmed, with costs against the Trustee personally.

Judgment of Supreme court affirmed by Court of Appeals, February 26th, 1884, with costs against the appellant personally.

fant in her support and education, and that it is reasonable in amount, it becomes a proper and legal charge upon the income of the trust fund under the will of Ernestine R. Freeman, and it is not within the discretion of the trustee to utterly refuse to provide for the support and education of the *cestui que trust.*

Fifth. That it is not necessary to bring an action against the executor and trustee before coming to this court for relief.

Sixth. That the decree to be entered should provide that the executor and trustee pay the claim of the claimant out of the income of the trust funds in his hands, as such executor and trustee :

And made a decree allowing the accounts of the executor as presented, and directing the payment of the claim of the claimant, as follows :

"And it further appearing from the evidence that a claim amounting to the sum of $890.35 has been presented for payment to the executor by Mrs. Louisa Frances Follett for the support, education and maintenance of her child, Louisa F. Follett, and for clothing furnished said child; said claim being presented to said executor as trustee under the will of testatrix ; and objection being made to the payment of such claim by said executor; after hearing the evidence offered in support of, and in opposition to said payment, it is further ordered and decreed that such claim be allowed in full and paid by said executor and trustee from the balance of moneys in his hands."

Isaac S. Newton, *for executor aad trustee.*

B. J. Scofield, *for claimant.*

Samuel R. Follett, *special guardian for infant cestui que trust.*

THE SURROGATE.—The only disputed question upon this accounting arises under the third clause of the will of the testatrix, which is as follows:

"*Third.* I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal of every name and nature, unto Albert F. Gladding, of the village of Norwich, New York, in trust for, and for the use and benefit of Louisa F. Follett, daughter of Samuel R. and Louisa Frances Follett, of the village of Norwich aforesaid, to take possession of the whole of said property and invest the same as he deems advisable and appropriate, and use the income thereof in his discretion for the education and support of said Louisa F. Follett until she arrives at the age of twenty-one years, and then to transfer, deliver and convey to said Louisa F. Follett all of said property, or the avails thereof, together with all increase or profit therefrom ; provided, however, said Louisa F. Follett shall have died at the time of my death, or shall die before arriving at the age of twenty-one years, I direct said trustee to transfer, deliver and convey to said Louisa Frances Follett all of said property or the avails thereof, together with all increase or profit therefrom, to be the property of said Louisa Frances Follett forever."

As appears from the account rendered by Mr. Gladding he has only expended for the education and support of his *cestui que trust* since the death of the testatrix, which occurred March 16th, 1877, as follows:

### SCHEDULE E.

" A statement of all money paid by me to Louisa F. Follett, the lega-

tee and *cestui que trust* named in said will, and of all moneys paid for her education and support:

October 19th, 1878—Paid M. C. Griswold for musical in-
  struction of Louisa F. Follett...................... $8.90
October 28th, 1877—Paid Mrs. S. R. Follett for the sup-
  port and education of said legatee, by delivering to her
  for the use of said legatee the last fifteen items of per-
  sonal property mentioned in said inventory at the in-
  ventoried price and value thereof....................119.50
                                                        _____
                                                        128.40

Excepting the above items, Mrs. Follett has wholly supported and educated her daughter since the death of the testatrix.    It was conceded, upon the hearing, that Samuel R. Follett, the father, went into bankruptcy about the year 1876, and has been in embarrassed circumstances since that time, and was unable to support his daughter during the time the bill presented for her support was made.

In February, 1881, Mrs. Follett asked Mr. Gladding to pay her some money from the estate towards the support of her child, which he declined to do until after he should have a final settlement as executor, and the fund be thereby established.    In September or October, 1882, Mr. Scofield, Mrs. Follett's attorney, talked with Mr. Gladding about having an allowance made for the girl, but no allowance was made.

Upon this accounting, Mrs. Follett presents an account of $650, for five years' board and maintenance of her daughter, and also an account of $240.35, assigned to her by her brother, John R. Conkey, for money advanced by him, for the support, maintenance and education of Louisa, and various bills paid by him for her clothing and tuition.    And Mrs. Follett asks that the

decree, to be entered upon this accounting, provide for the payment of these bills from the income of this trust fund.

It is conceded that these bills "are reasonable in amount, and the expenses therein stated have been incurred for the benefit of said infant in her support and education." It is also conceded that the interest and income of this fund have been greater than the sums paid for the support and education of said infant.

The executor and trustee objects to the allowance of the claim upon two grounds: *1st.* That, by the terms of the will he is invested with the discretion to use the income of the fund for the support and education of the infant, or, if he thinks proper, to refuse to use it, or any part of it, for that purpose; and that, believing as matter of fact, that the mother was able, and as matter of law obliged, to support her child, the father being unable, he has exercised his discretion by refusing to use the income of the fund for that purpose, and that the mother is bound by his decision. *2nd.* That the law of this State compels the mother, the father not being able, to support and educate her children, and therefore she can prefer no legal claim as against the income of this fund, for expenses incurred by her in such support and education.

Title 6 of Chap. 18 of the Code of Civil Procedure confers upon Surrogates' courts jurisdiction over the accounts of testamentary trustees, to hear and determine all issues arising on accounting, accept his resignation, remove him for misconduct, etc., and appoint another in his place. This court now has in these matters all the powers of a court of equity, and the decree (§ *2813*)

"has the same force as a judgment of the Supreme court to the same effect."

This proceeding is technically an accounting of Mr. Gladding not as testamentary trustee, but as executor, yet all the parties who can have any interest in the determination of the claim presented by Mrs. Follett are before the court, and have been fully heard upon the matter. The accounting, in fact, involves all that has been done as testamentary trustee, as well as executor, and § 2812 of the Code gives ample authority to pass upon this claim.

There is no *fact* in dispute, excepting as to the pecuniary ability of Mrs. Follett to educate and support her daughter. If my view of the law is correct, this question is not material, for I do not think a married woman is liable for the support and education of her children during the lifetime of her husband, except under the poor law, when the children are paupers. This statute is only intended for the indemnity of the public against the maintenance of paupers, and applies to children of any age.

The obligation to support and maintain infant children is by common law, and it requires the father to support his minor children if he be of sufficient ability, even though they have property of their own, but this common law obligation does not extend to the mother, and the rule as to the obligation of the father, when the infant has property, has in practice become considerably relaxed (2 Kent Com., *191, 192;* Tiffany and Bullard on Trusts and Trustees, *647, 648;* 1 Jarm. on Wills [*Randolph and Talcott's ed.*], *702, 703*).

Under the third clause of the will creating this trust,

tho "discretion" of the trustee does not extend to the trust itself—to the giving or withholding—but to the *manner* of giving. The trust is *imperative* that the income of the fund be used for the purpose stated ; the particular manner in which it shall be used is discretionary. There is nothing in the language of the bequest to indicate that it is *optional* with the trustee to use, or not to use, as he chooses.

The income of this fund is given as absolutely for the support and education of the infant during minority, as the principal is given to her when she becomes of age. The intimate relations existing between the testatrix and the Follett and Conkey families makes the language of this trust still more emphatic. She knew of the financial embarrassments of the father and his inability to properly support and educate his child, and to insure such support and education devoted the income of her entire estate to this object, and the principal absolutely, when she should reach majority.

Even where the rents and profits are directed to be *accumulated* for the benefit of infants entitled to the expectant estate, and they are destitute of other sufficient means of support and education, the Revised Statutes gave the Chancellor power to direct a suitable sum out of the rents and profits to be applied to their maintenance and education (*3 R.S., 7th ed., 2179*).

In the Matter of Burke infants (*4 Sandf. Ch., 617*) the Vice Chancellor thought it better to promote the permanent interest, welfare and happiness of the infants than to accumulate a surplus. In that case the father had received $25,000 life insurance on the life of his wife, but the court ordered an allowance to

the father largely beyond the actual cost of the support and education of his infant daughters, payable out of trust property, the income of which was payable to their mother during life, and then to the children.

In the Matter of Kane (*2 Barb. Ch., 375*), it is held by the Chancellor that, in a proper case, the father will be entitled to an allowance for the *past* as well as future support of his infant children.

In Smith v. Geortner (*40 How. Pr., 185*), it is assumed by the court, without discussing the question, that the father may be entitled to an allowance from the trustee for the past support of his infant children.

In the Matter of Bostwick (*4 Johns. Ch., 100*), the Chancellor ordered a reference to inquire as to the justice and truth of a mother's charge for past support.

In Thompson v. Brown (*4 Johns. Ch., 619*), the widow, who was also the administratrix and guardian of her children, having received and applied rents and profits of her infant children's real estate towards their support and education, it was held that she need not account for such rents and profits.

The case at bar is much stronger in favor of an allowance to the mother than that of Wilkes v. Rogers (*6 Johns., 566*), in which the Court of Errors reverse the decree of the Chancellor and hold that the mother, the father being dead, was entitled to an allowance out of the rents and profits of the infant children's property for their past support and education, although she had a large separate estate.

The well considered opinions of YATES and SPENCER,.

J. J., sustained by the English authorities cited by them, are decisive of this case.

The decree to be entered must direct the payment of the bills of Mrs Follett, from the income of the trust fund.

Decreed accordingly.