Johnston, Chancellor.
The verdict rendered to me is not open to my examination, being grounded on an issue ordered by another Court. That- Court, if it had authority to order the issue, (having ordered it for the satisfaction of its own conscience, and not for that of this Court,) is alone competent to decide whether the verdict is sufficient to remove the scruples which occasioned the order.
If it was competent for me to examine the verdict, I am free to say that it is as satisfactory as any verdict could be, rendered by a jury having before them only part of the materials which, from the nature of the case, bore as evidence upon the point at issue.
The Court of Appeals, in conceding that the existence or want of consideration for the bond and mortgage of the 3d of May, 1819, might influence the opinion of the jury upon the question, whether the accountable receipt of the same date, called a defeasance, was signed by Price, admits in substance, that the consideration of that bond and that mortgage is matter of evidence on the question last mentioned. Thus, if the direct evidence as to the subscription to the receipt, was equally balanced, and under these circumstances it was proved that the bond and mortgage were upon full consideration, it would be difficult to believe the receipt was genuine; since that would imply that Price had signed a paper giving away upwards of six thousand dollars of his own money. Rut if, under the same circumstances, it was established that the bond and mortgage stood upon no consideration, the mind would conclude it more probable that Price, losing nothing by it, might have signed the receipt. The evidence, therefore, touching the bond and mortgage, was circumstantial testimony as to the genuineness of the ^receipt for them. If,-therefore, there ever was any propriety in sending the latter point to a jury, the evidence respecting the consideration of the bond and mortgage ought then to have been received ; whereby the parties would have saved the expense and delay of a second trial.
*295 But I do not believe a jury could liave over inquired profitably into tlie consideration of the bond and mortgage. How could they have ascertained the consideration of them, without examining the accounts from beginning to end ? But this, a Court of law, from its structure, could not well do : and hence a Court of law is never required or permitted to examine matters of account, except when they spring up collaterally to a matter of which that Court has original jurisdiction ; and then, only from the necessity of the case.
Now, the accounts here were never left to the jury, but were all disposed of and sent back to the Commissioner in the same decision which ordered the issue on the accountable receipt: nor did the commissioner make up the accounts under the appeal decree, until after the jury rendered their verdict.
But, inasmuch as the accounts, as made up, upon principles which have been settled both here and in the Court of Appeals, from the best examination I have been able to give them, show a probability that the bond and mortgage were executed upon consideration, I should, if the verdict were returnable to this Court, agree with it. I should say that the bond and mortgage were valid ; and that the accountable receipt for them was a forgery ; indeed, as to the latter, I think there is greatly preponderating evidence of the forgery, independently of the consideration upon which the former stands — so preponderating that I should have decided without subjecting the parties to the expense and delay of an issue at all; in which decision, to be sure, T should not have neglected the light which the accounts and the bond and mortgage would have afforded me.
Being convinced that so fa.r from being bound, I am not at liberty to take cognizance of the verdict rendered upon the issue ordered by the Court of Appeals, while on the *other hand, I am bound to decide on the accounts as made up by the Commissioner, that part of the case having been recommitted to this Court, with directions pointing out the errors to be avoided ; I cannot express my embarrassment ; for it is necessary to a full decision on the accounts that the matters of the. bond, mortgage, and accountable receipt, be taken into consideration ; yet they constitute equities reserved in the Court of Appeals. I felt very much the same difficulty as in Fraser and Vaux, (Charleston, 1833,) where the equities were not remitted by the Court of Appeals, but held in their own hands for decision, while, to satisfy themselves, they ordered certain inquiries by the Commissioner. In that case, I could not decide on his report when it came in.
In this condition, what am I to do ? The order for the issue is not one of this Court, so that if I were satisfied the jury were wrong, I could not supersede it, either for the purpose of deciding for myself on evidence, or for the purpose of ordering another trial, either on the same terms or others. I do not know what the doubts of the Court of Appeals were founded on, so as to say whether the verdict would or ought to resolve them.
On the whole, after much reflection, being determined not to embarrass the case or delay the parties, if any thing I can do can avoid it, I have come to the conclusion, inasmuch as I think, on the evidence and accounts independently of the verdict, that the bond and mortgage arc founded on a consideration, and that the receipt is a forgery; that my *296 best course is to sustain the former and reject the latter, in deciding upon the Commissioner’s Report. This is but an affirmation of the former Circuit decree. If the Court of Appeals should, on considering the verdict, come to the same conclusion, the case will have been forwarded: if not, they can correct the report.
Will the difficulty in which I have found myself authorize me to state, with deference, very briefly and imperfectly, why I think the Court of Appeals cannot order an issue in an Equity case ? (Wilks’ case, Columbia Appeals, 1831.) If it be not presumptuous, I would venture to do so.
An issue, such as this, is intended to ascertain a fact.
*It belongs to an appellate jurisdiction, supervising a law decision, to correct, by the Appeal decision, errors of law; but, as to errors of fact, the only correction it can make, is to remit the case to the original tribunal for another trial.
The appellate power, as respects an Equity case, extends to the correction by the Appeal decision, of errors of fact as well as those of law. 11 John. Rep. 406; Rolle Abr. 805; Bac. Abr. tit. Error, M. § 2.
In remitting a law case upon matter of fact, the appellate Court cannot remit one or two points only; it must remit the whole case, and put the .Court below in possession of it, so far as the facts are concerned, in as full and ample a manner as it had at the first trial. Why ? Because the people, by the Legislature, have committed to the Court below, as constituted by them, the decision of the facts; and have only allowed the decision to be supervised, by way.of appeal. Under the guise of supervision, the Court of Appeals cannot send the facts to a tribunal more satisfactory to themselves. It belongs to the Legislature, under the Constitution, and not to the Court of Appeals, to parcel out the judicial power. Const. of S. C., Art. 11, Sec. 1.
With regard to Equity cases, there is' no difference, as respects the power of the appellate jurisdiction to correct errors of law. Neither, speaking for myself, do I question its power to correct errors of fact; although the Appeal opinion, in this very case, speaking of the credit given by the Chancellor and Commissioner to paper evidence, says, “ both of them having concurred in giving full credit, this Court has neither the inclination nor the power to question the correctness of their conclusion.”
But, when an Equity decision on a matter of fact comes up, the correctness of which is doubted in the Court above, what has it power to do ?
Although the members of the appellate Court nlay think the evidence so doubtful, that if they had been sitting on the Circuit in the Court of original jurisdiction, they would have ordered an issue ; yet, can they say, under the Acts constituting the Court of Equity, it was error of law in the Circuit Court not to have ordered one ? This Court is constituted by Act, (Trott. No. 460; A. A. 1721, sec. 10,) with a direction to “proceed, adjudge, and determine, in all causes brought into the said Court, as near *as may be, according to the known laws, customs, statutes and usages of the kingdom of Great Britain ; and also, as near as may be, according to the known and established rules of his Majesty’s High Court of Chancery, in South Britain”—and again it was declared by act, (P. L. 337-9; A. A. 1784, sec. 5,) that “this Court *297 shall have foil power and authority to establish such standing rules and orders (not repugnant to that Act) for regulating the practice of the said Court, as they shall deem most consistent with justice and equity, and as may effectually tend to the dispatch of business without unnecessary delay to suitors.” By the Act of 1808, (vide 1 Faust, 29, 34; A. A. 1808, sec. 4,) the Judges of the Court of Equity were directed to convene at stated periods, “ to try all appeals that may be brought up from the Circuits. ”
The Act of 1824, (A. A 1824, p. 11, sec. 1,) constituting a separate Court of Appeals, gives it “ appellate jurisdiction in all cases brought up from the Circuit Courts, both of Law and Equity, in the, same manner, and with the same powers and authority, in all respects whatsoever, as are now exercised by law, by the Constitutional Court, and the Court of Appeals, [in Equity,] or by either of them separately.”
With regard to the Constitutional Court, it can hardly be necessary to remark, that its appellate power related solely to cases carried from the Law Circuits, and consisted under the Constitution, (State Const., Art. 10, sec. 3,) merely “in hearing and determining all motions for new trials, and in arrest of judgments, and such points of law as should be submitted to them,” at the end of each law circuit.
In this manner has the Legislature parceled out the Judicial power, so far as this Court and the Court of Appeals are concerned: which partition has the sanction of the Constitution, (Art. 3, sec. 1,) which declares that “ the judicial power shall be vested in such superior and inferior Courts of Law and Equity, as the Legislature shall from time to time direct and establish.”
Eow, can the Court of Appeals, as an appellate Court, pronounce it error of law, in any ease, in a Chancellor, not to have directed an issue on a matter of fact ? The Legislature has given him the decision of facts, with no other qualification than that, if he feels himself at a loss *upon the evidence, he may, after the pattern of the English Court, ask the aid of a jury.
If he orders an issue, the question involved in it is still with him ; and 1m may supercede his order, if his doubts vanish, or if the parties, depending- on the fact that the Court of law cannot nonsuit the action for want of diligence, are guilty of gross delay ; or he may differ from the verdict, upon its return to him, (17 Johns. R. 267;) or he may order a second trial, if his judgment is not satisfied by the first. All this is “according to the known and established usages in chancery in South Britain.” Is it error to pursue it when the Legislature directs ?
It is not error, before an appellate Court, that the Circuit Court having authority to do it has refused a new trial, (4 Wheat. 220,) can it then, on principle, be error, that the Court of Equity has not asked the aid of a jury ?
The Court of Appeals occupies the same relation to this Court which the House of Lords does to the Court of Chancery in England. I have searched diligently, but in vain, for a single instance in which that house has either ordered an issue, or held it error that the Chancellor failed to order one.
The Legislature has given this Court the decision of facts, and this it holds under the Constitution. Can it be taken from it by another Court *298 without a violation of that instrument ? The Legislature has. intrusted this to its capacity and judgment: who is authorized, but the Legislature, to say that the functionaries thus intrusted are not capable? Others intrusted with the supervision of their errors, may correct them, if it be apparent they have committed any; but it can never be allowed that, because they doubt whether error has or has not been committed, they should cashier them for incapacity, and transfer their trust to others; thus in reality constituting those whom the Legislature has appointed judicial officers, mere commissioners to take testimony, the original power of decision being in reality in the Court above, who aid themselves in exercising it by calling on a foreign tribunal.
If the Legislature had thought a jury indispensable to the decision of facts, they would have annexed one to this Court. I value the judgment of a jury so much myself, that, with deference* to the better opinion of the Legislature, I wish this Court had the power of impanneling one on suitable occasions. I would frequently consult them, but for the delay and expense attending the orders of issues. It puts back parties at least a year, and the expenses are very great.
But to return, it may be asked if an appellate Court cannot order an issue, when it may doubt whether the Court below has decided correctly on a fact ? What is it to do ?
What is a Court of Appeals intended for ? Is it intended for any other purpose than to correct errors ? Then if it is not able to say that error exists in the circuit decision, it is not at liberty to disturb that decision, but must let it stand. (2 McC. Ch. R. 15, 59, 71, 73, 74, 95, 194-5.)
What authority has the Court of Appeals over a verdict at law ? Can it set it aside unless it is against evidence ? If the evidence leaves the fact doubtful, in the minds of the Appeal Judges, is it not their constant habit to say that the jury, the authority established to decide facts at law, having decided, they are not at liberty to set their verdict aside ? Yer-dicts cannot be set aside but for manifest error.
The Court of Appeals has put the decisions in equity upon the same footing with verdicts at law. (2 McC. R. 71, 73, 74, 75 ) The late Judge Nott, in a case in which he delivered the opinion of the Court of Appeals, speaking of a matter of fact, said, “that was properly for the consideration of the Chancellor, and this Court will not interfere unless the decree were manifestly contrary to the weight of évidence. The decree of the Chancellor must in that respect be considered in the nature of a verdict at law.” (2 McC. Ch. R. 71.) Mr. Justice Johnson, in delivering the opinion of the same Court in another case, says, “the Court takes this occasion ‘ to lay down a few rules’ which have become the more necessary under the recent modification and present organization of this Court.” (2 McC. Ch. R. 73-4-5, 1827.) He then speaks of “unmixed questions of fact.” He acknowledges that the Court of Appeals is not so competent as the Circuit Court, which hears the evidence, to decide such questions. I may be allowed to observe by the way, that if they are not so competent, merely because they do not see the witnesses, their merely doubting is no reason either of reversing a decree or ordering an issue to relieve their doubts, since it might be that if they heard the evidence, as *the Chancellor does, they might, like him, have no doubts. The Judge *299 goes on and says, “where there is evidence on both sides, this Court will not weigh it, for that belongs to the jury ; and their view of it is conclusive. And so, unless it appears that they have acted under a mistake, or have been so palpably influenced by some improper motive, that the erroneousness of their conclusion is such as to strike the understanding with conviction at once, this Court will.not set their verdict aside. Now, all the reasoning upon which these rules are founded” (he continues) “ applies with equal, indeed with greater force, to a case coming up under a report from the Commissioner, through the medium of the Chancellor, because we are removed one stage farther from the original source — and this Court feels warranted in adopting these rules for its future government.”
These remarks spring from a true conception of the nature and duties of appellate jurisdiction. It was never intended to provide for two full trials in every case. It was never intended that as a prerequisite to a decision, there should be found two tribunals equally concurring in it; it was not intended to set up judicial machinery so calculated, as that would make it, to wear out the citizen by delay aud impoverish him by expense. It was not intended that the circuit decision should be void and go for no decision unless affirmed by another Court, but that it should be a valid judgment unless disaffirmed ; therefore, the Court undertaking to set it aside, must see that there is error, not merely doubt whether there may or may not be error ; it was intended to terminate litigation as speedily as it could be done, by a decision of which none could say it was erroneous. It may be said of a large portion of controversies, that if they should be subjected to five hundred trials, doubts could not be removed, or a certainty of justice obtained; but society must adjust controversies ; and as soon as it can do so without injustice and error, it is its duty to do it.
Now, under the rules laid clown by the Court of Appeals itself, for its government, (and as an appellate tribunal it could lay down no other) that Court must acquiesce in every circuit decision in equity, containing no error of law’and no manifest error in fact.
*If there be manifest error in fact, if such circuit decree be manifestly against evidence, it must reverse the decree. If the error be not palpable, the decree by their own rule must stand.
But even if that Court were at liberty to withhold its confirmation from a circuit decree because they doubted on it; (which, by the way, is a misconception, circuit decrees not requiring confirmation in order to their validity) but even in that ease, it does appear to me that by analogy to what is done in new trials ordered at law, the Appeal Court is bound to remit the case to the Circuit Court for new trial, exactly upon the same terms as it stood at the first trial.
I trust I have not transgressed in the observations I have ventured. It was not my intention to do so. I have studied to avoid language calculated to throw any reflection upon the enlightened tribunal of whoso powers I have been speaking; and if any such has crept into what I have said, it was against my will. All I intended was to protect the tribunal to which the Legislature has appointed me, from violation ; to preserve it in the same condition in which it was by the Legislature, under the Constitution, delivered to me.
Bis Honor then took up the Commissioner’s report and considered the *300 exceptions thereto, but refused to allow any exceptions to such parts of this report as were not excepted to in the former report, and to consider any exception which had been put into the former report, unless supported by the former decree. After having'overruled the exception and confirmed the report, there appearing a large balance in favor of the defendants, the Chancellor di^nissed the bill.
A. W. Thompson, for the appellant.
Farrow and Williams, contra.
From this decree the plaintiffs appealed, on the ground of error in the Chancellor’s decision, in refusing the motion for a new trial and in overruling the exceptions.
O’Neall, J.
The Chancellor has, at great length, and with much learning, discussed and denied to this Court the power of ordering an issue. Until he agitated the question, we did not suppose there was a doubt entertained upon the subject by any member of the Bar in South Carolina. The *practice can in our own reports be traced back to a period within five years of the origin of the Court of Appeals in Equity. Taylor and wife v. Mayrant, et al. 4 Eq. Rep. 313 From that time to the present, it has been constantly used by the former Court of Appeals in Equity and the present Court.
Without pretending to argue the question on the precedents from England or New York, it will surely be enough to satisfy the Chancellor, to remind him that a Court of Appeals in Equity, organized as ours, is unknown to the jurisprudence of the countries from which he has drawn so largely.
The Act of 1808, after providing for the establishment of a Court of Appeals in Equity, and for the arrangement of two semi-annual Courts, at Charleston and Columbia, provides, “ and it shall bo the duty of all of the Judges of the Courts of Equity to attend at the said Courts of Appeal, and to hear and try all Appeals that may be brought up from the Circuits hereby annexed to the said Courts respectively.” The succeeding section directs the manner in which any person may appeal from “ any order or decree of any Judge presiding on the Circuit.” These provisions do not merely create a Court of Errors for the revision of decrees in Chancery : but they create an appellate tribunal “to hear and try all Appeals,” whether of law or fact. The Court thus constituted became pro hac vice the Chancellor, and iu his place exercising his power of hearing and trying, must render the appropriate judgment which he ought, but has perhaps failed to give. To enable the Court of Appeals to do this, it must have all the Chancellor’s powers, among which is his discretionary power of ordering an issue to inform his conscience on a doubtful question of fact. This is as necessary to three judges as it can be to one. For they may have consciences desiring information as well as he. I presume no one of the five judges who originally constituted the Court of Appeals in Equity ever doubted, that as a Court of Appeals collectively, they had in cases of appeal all the powers which individually on the Circuit they could exercise. If any did, why did they unanimously order an issue *in Taylor vs. Mayrant? If the former Court of Appeals in Equity had the power, this Court unquestionably has the same. For the Act of 1824 abolished the Court of Appeals in Equity and the *301 constitutional Court, and created this Court in their stead, giving it ail the powers which belonged to either. It is true we are reluctant to decide upon questions of fact: we generally prefer to follow and adopt the Chancellor’s decision. In expressing our concurrence on questions of fact in which the Commissioner and Chancellor have united in judgment, we have used the loose expressions “this Court has neither the inclination nor the poioerto question the correctness of their conclusion.” Butin using such expressions it was not intended to disclaim the power of examining a Chancellor’s decision upon facts in every case; but merely to say in the particular case, that according to previous decisions we could not interfere with'that decision. I am sure, after the short experience I have had on this Bench, that I can safely say we have no wish to increase our jurisdiction, or to trench in any way upon the jealously guarded jurisdiction of Ghanc'ery. But it is our duty, as well as that of every other Judge, to “judge righteously between every man and his brother and the stranger that is with him.” We as well as the Chancellor are charged “ye shall not respect persons in judgment, but ye shall hear the small as well as the great; ye shall not be afraid of the face of man, for the. judgment is God’s.” In the exercise of such a duty, appellate as it happens to be-in our case, we must be satisfied that the judgment which we are to pronounce is correct. If we do not perceive manifest error in the Chancellor’s judgment, upon the facts, we may be justified in resolving our doubts by the arbitrio boni viri: but if we do perceive error, and yet are not satisfied to say that the Chancellor’s decision is so manifestly wrong that we will reverse his decree, we surely have the right to inform our consciences by the verdict of a jury, before we give a final judgment in the place of the Chancellor.
We agree with the Chancellor, that the Court ordering the issue has the power of deciding upon the motion for a new trial of the issue. Taylor vs. Mayrant, 4 Eq. Rep. 515. *But unless, as in the case of Taylor vs. Mayrant, the decision upon the verdict in the issue may involve a reversal of some previous decree in the cause, I see no impropriety in the Chancellor hearing and deciding upon a motion for a new trial of an issue ordered by this Court. In some cases such a course may be necessary (as in this) to bring up the whole case to this Court. The Chancellor can have as little difficulty in saying whether the result of the issue would be satisfactory to our consciences as he would have in determining whether the result of an issue ordered by his colleague, would be to him. His conscience would, in each case, be the conscience of the Chancellor seeking information. But it seems to me, in this case, that he ought, according to his own principles, to have decided on the motion. Chancellor Thompson ordered the issue in the first instance— this Court, in the former opinion, enlarged the order, and directed the issue to be made up anew, conforming to this enlargement. This surely was not ordering an issue for our information alone — the doubt originated in the conscience of the Chancellor, he ordered an issue; we thought his object would be better obtained by adding another inquiry. So that, in this point of view, the Chancellor ought to have met, considered, and decided upon the motion for a new trial of the issue. But as his decree, dismissing the bill, is, in effect, a refusal of the motion for a new trial, it *302 will not be necessary to remand the cause to the Circuit for an express adjudication upon that motion.
[His Honor here went into an examination of the grounds on the motion for a new trial, which having been considered, the motion was refused. As they relate entirely to the facts, and involve no legal principles, the remarks on them are omitted ]
This brings us to consider of the questions arising out of the accounts ; and it is to be regretted that the complainant’s counsel had not, on the former occasion, when this case was before us, presented his objections. If this had been done, the case might have gone back, with such instructions to the Commissioner as would have enabled him to *havepre-sented a report, calculated to do equal justice to the parties. But, as it is, he has been limping on in the dark, with instructions to direct him on a part of the case, but none as to the other parts. --That injustice has been done, under such circumstances, is not to be wondered at; and that the case must once more go back, almost to its beginning point, is to be regretted, (but it is no great marvel), after a pilgrimage of ten years in Chancery.
I agree with the complainant’s counsel, that he was not bound to appeal to this Court, on any-of the points involved in the Commissioner’s report, so long as any thing remained to be done by the Commissioner to complete it for confirmation generally, and until it was confirmed by the Chancellor’s decree. But although I think he was not, according to the practice of this Court, bound to appeal, yet I think he could have appealed on any point which the Circuit decree finally settled.
The Chancellor is correct in saying that a report of the Commissioner must be regarded as correct, unless the party complaining of it will specify its errors by exceptions. The rule is very well stated, by Mr. Justice Spencer, in the case of Wilkes vs. Rogers, 6 John. Rep. 591, in the following terms: “It appears to me, that exceptions partake of the nature of special demurrers; and if reports are erroneous the party must put his finger on the error. When he does so, the parts not excepted to are admitted to be correct, not only as it regards.the principles, but as relates to the evidence on which they are founded.” If a party does not think proper to except to a report at all, he cannot be heard against its confirmation, on account of any error, either of law or of fact, committed by the Commissioner. Foot vs. Van Ranst, ante, 128, decided at Charleston, April, sitting, 1833. But under the practice heretofore pursued by this Court, if a party excepted to the Commissioner’s report, and some of his exceptions were sustained, and some overruled, and the case sent back by the Chancellor to the Commissioner, he might appeal at once, to this Court; or wait until there was a final decree of coufirma-ti01VK and thus bring up the whole case. This is in the language of Judge Holt, in the case of Harrison vs. Jenkins, allowing the party the right to appeal as “ long as there is a fragment on which he can lay hold.” The complainant, as it appears from the Chancellor’s decree, excepted to the Commissioner’s report, before Chancellor De Saussure, on all, or nearly'.all, the points on which he excepted to it before Chancellor Johnston. It .is true, that he could not allow the exceptions contrary to his predecessor’s decree ; still, however, under the rule of practice which I have stated, the complainant has the right of appeal, and it thus *303 becomes necessary for us to decide on the merits of the various exceptions put in by the complainant, to the Commissioner’s report.
[Having examined the exceptions and sustained some of them, Chancellor Johnston’s decree was reversed, and the case sent back to the Commissioner, with instructions to restate the accounts.]
Johnson, J., concurred.