WESTCHESTER COUNTY.—HON. OWEN T. COFFIN.—SURROGATE.—March, 1880.

## VOËSSING v. VOËSSING.

*In the matter of the accounting of* CLEMENTINA VOËSSING, *general guardian of* JOSEPH B. VOËSSING, *a minor, deceased.*

It is the primary duty of a parent, whether father or mother, if of sufficient ability, to support their minor child.

Where the parent of a minor is also guardian, the circumstances of the parent, as well as the amount of the ward's estate, may be taken into consideration in determining the liability of the former to support the latter.

An allowance may be made in a proper case for past maintenance of a ward. Where the ward's income is insufficient, the guardian should apply to the court for leave to use so much of the principal as may be necessary to support the ward; still, if he encroaches upon the principal without such leave, the court may, if the proceeding seems to have been for the welfare of the ward, sanction it.

After the father's death in 1870, the mother of a minor supported him for a period of three years, until her appointment as the guardian of the minor, in 1873. The mother's income, from 1870 to 1875, consisted of the annual interest on the sum of $5,000, and such sums as she earned by menial services for others, besides the sum of $1,000, paid to her by order of the Surrogate's Court during this period. The payment of the

interest on $5,000 was stopped by injunction in 1875.    Thereafter the mother received, as her share of her husband's estate, the sum of $2,960 During this whole period she was involved in continuous litigation. The ward's estate amounted in all to $3,542, of which the sum of $2,650 represented the ward's share of the proceeds of a partition suit.    This sum was paid to the guardian by order of the Supreme Court, for the maintenance and education of the ward.    The guardian used a portion of the principal for the support and education of the ward who was sickly and died.    Upon an accounting by the guardian, *Held.* that the guardian should be allowed for the maintenance of the ward, both during the period of guardianship and also from the time of the father's death, and that the encroachment on the principal being necessary for the welfare of the ward, was proper.   ·

In such a case vouchers are not necessary.    It is in the nature of a claim against the estate of the ward, to be substantiated by ordinary proof.

Nor is it necessary, in such a case, to keep accounts.  Where a ward's share of the proceeds of a partition sale is directed by the Supreme Court to be paid to the guardian for the maintenance and education of the ward, and it is so paid, the Surrogate has power to call the guardian to account for such share.

The guardian will be allowed payments, made to counsel, in litigations relating to the ward's estate.    The fact that the vouchers for such payments are recently executed is immaterial.

Allowance to guardian in this case, for support and education at the rate of $4 per week; for medical attendance and medicines, $66 ; counsel fees, $575.

APPLICATION for the settlement of guardian's accounts.

Ignatius Voëssing died in November, 1870, leaving his widow, Clementina, and the minor, born in October, 1869, surviving, and also leaving an alleged last will and testament, in which said widow, Anthony J. Brandlacht, and John E. Benning, were named as executors.   On the will being admitted to probate, Brandlacht qualified, and the widow was refused letters, on opposition made, for the reason that she could not read and write the English language.    The other executor, Benning, was removed for cause.    The executor Brandlacht never filed an inventory.    Subsequently the probate was revoked, and Henry

F. Voëssing was duly appointed the administrator of the deceased.   In his petition, he represented that the value of the personal estate did not exceed $10,000 ; and the inventory filed by him placed its value at between $9,000 and $10,000.

In December, 1873, the widow was duly appointed the general guardian of the minor, who had been maintained by her since the death of its father.   An effort made to remove her was unsuccessful.   In 1874 she made an application to the court for an order directing the payment to her of some portion of said minor's share, as necessary for its support, alleging that she had no means to support it, and that she had incurred liabilities on that account. This was resisted by the step-sons, but an order was thereupon made, directing the payment of $150 to her for the support and maintenance of the child.   In 1875, a similar order was made, directing the payment of $500, she giving the usual bonds.   The guardian subsequently received $235 as the balance of the distributive share of said minor in said estate.   A partition suit was instituted in regard to the decedent's real estate, the same was sold, and the minor's share, amounting to about $2,650, was paid to the county treasurer of Westchester county. In 1876 the Supreme Court, by order, reciting that the moneys were necessary for the support, maintenance and education of the minor, directed the treasurer to pay them to the guardian, which was accordingly done. Mrs. Voëssing had no property of her own.   Her husband, in his life-time, invested $5,000 for her benefit, and she received the interest thereon, down to 1875, since when she had received none.   She also, in 1874, before the revocation of probate, by petition representing her con-

dition, to be one of destitution and want, rendering it necessary for her to perform menial services, for the support of herself and child, received by order of this court $500 on account of her legacy; and in 1875, $500 more on account of her distributive share as widow, by like order, on giving the necessary bonds. On the accounting of the administrator in 1877, she received, as the balance of her distributive share, $300, and she received, as a sum in gross, in lieu of dower, from the proceeds of the partition sale, after deducting charges of counsel, $1,660. It is claimed on behalf of contestants, but denied by Mrs. Voëssing, that she drew out of the German Savings Bank of Morrisania, between 1869 and 1874, the sum of $5,032,04. The ward died in June, 1879, and letters of administration on his estate were subsequently granted to Mrs. Voëssing, by the Surrogate of New York. She now prays for the settlement of her accounts as guardian, and objections are filed by the step-sons to the account, in regard to which the proofs have been taken. Other facts appear in the opinion.

JOHN McCRONE, *for guardian.*

B. E. VALENTINE, *for contestants.*

THE SURROGATE.—The estate of Ignatius Voëssing seems to have occupied much of the attention of various courts for the past ten years. A feeling of hostility appears to have existed during all this period, and which is not yet extinct, between the widow and her step-sons, Henry F. and Enoch J. Voëssing, to which the litigation is largely due. While the courts may reprehend the manifestation of such feeling among those whose family

relations render it discreditable to all concerned, yet they cannot escape pronouncing judgment upon such questions as may be presented for consideration, in whatever spirit they may have their origin.

It is proper, in considering the facts of this case, and the rules of law applicable thereto, to lay down a few well-established principles. It is, then, no part of the duty of a guardian, simply as such, to contribute to the support of the ward out of his own funds (People *v.* Kearney, 19 *How. Pr.*, 493, 499) ; but it is the primary duty of a parent, whether father or mother, if of sufficient ability. Without regard to this duty, imposed by the law of nature, our statutes expressly recognize the obligation of the parent to prevent the child from becoming a public charge. If, however, the parent be also the guardian of a minor, having an estate of its own, then the circumstances of the parent, as well as the amount of the estate of the ward, may be taken into consideration in fixing the degree of, and determining whether there is any, liability of the former. (Matter of Burke, 4 *Sandf. Ch.*, 617 ; Matter of Kane, 2 *Barb. Ch.*, 375 ; Wilkes *v.* Rogers, 6 *Johns.*, 566.) The same cases also establish the principle that an allowance may be made for past maintenance and support of a ward in a proper case. (See also Matter of Bostwick, 4 *Johns. Ch.*, 100.) No inflexible rule can be established, but each case must be determined on the facts peculiar to it. The proper course to pursue, where the income is insufficient, is for the guardian to make application to the court for leave to use so much of the principal as may be necessary (*Dayt. Surr.*, 689) ; but in case he proceed without such leave, the court may, if the proceeding seems to have

been wise, and for the welfare of the ward, sanction it. (Carmichael *v.* Wilson, 3 *Moll.*, 84, 88; Walker *v.* Wetherell, 6 *Ves.*, 474; Smith *v.* Low, 1 *Atk.*, 489; Long *v.* Norcom, 2 *Iredell Eq.*, 354; 3 *Redf. on Wills*, 453.)

What are the facts in connection with which these principles are to be considered? The deceased left an estate originally estimated at from $20,000 to $25,000, about one-half being personal. The widow, from the death of her husband in 1870, down to 1875, received the interest on the sum of $5,000, invested by her husband for her benefit. This gave her the annual sum of $350 for the house rent, clothing and maintenance of herself and the minor; and it was all she received during those years, except the moneys paid to her by order of this court, and except what she earned by menial services rendered for others. Since 1875 she has received no interest on the $5,000 so invested, the persons holding the funds having been enjoined from paying it, but has received, as her share of the personal estate, $1,300, and the sum of $1,660 as her dower interest in the real estate, after deducting legal charges. It can readily be seen that the interest of these sums, added, making $2,960, would be wholly inadequate to her own proper support; and that the suitable maintenance of herself and child, and the education of the latter, to say nothing of the litigations in which she has been involved during the period subsequent to 1875, might well consume the whole of the fund. It is claimed, however, that she is to be regarded as having received the sum of $5,032, deposited in the German Savings Bank of Morrisania in 1869, during the lifetime of her husband. The facts in regard to it are left, by the testimony, very obscure. In the absence of evidence

to show to whose credit the deposit was made, it will be presumed to have been to that of the husband. She testifies that she drew out some, but does not state the time when, nor the amounts, nor does she state whether any was so drawn after the death of her husband. In fact, as she was neither executrix nor administratrix, the presumption is that it was not paid to her. On the inventory filed by Enoch J. Voëssing, as administrator, is an item of $4,999, in that bank, deposited by Brandlacht, but whether it is a part of the sum in question is not clear. A judgment has also been recovered by the administrator of Ignatius Voëssing against the legal representatives of Brandlacht, late executor, for $4,000. On the whole, I do not think the facts would warrant me in finding that she received that sum.

In a recent proceeding to remove Mrs. Voëssing as the administratrix of her deceased ward, instituted before the Surrogate of New York, Enoch J. Voëssing, one of these contestants, stated, in his petition, that she was of no pecuniary responsibility ; that her circumstances were too precarious to afford any security for the proper performance of her duty as such.

The minor was, as appears by the various proceedings, interested in the personal estate, independent of its interest in remainder in the $5,000 invested for the benefit of its mother, to the extent of $885, and its share of the proceeds of the partition sale was $2,657.77, making together the sum of $3,542.88, available for its support. The fact that Mrs. Voëssing, during most of the period, had a young niece as a member of her family, can, I apprehend, make little or no difference. The ward appears to have been sickly from infancy, requiring, doubt-

less, much care and attendance, and this niece, it may be concluded, by her attention to the child, and other aid rendered to the household, so far relieved the mother as to enable her to earn something elsewhere for the support of all, and this fully paid the mother and child for her maintenance. Under all these circumstances, I think that the guardian should be allowed, not only for her maintenance of the ward during the time she acted as such, but also from the time of its father's death, and that her encroachment on the principal of the fund, having been, on the whole, for the welfare of the ward, and necessary for its support, should be sanctioned.

But it is objected that no vouchers are produced for this support. I do not deem it a case calling for them. It is in the nature of a claim against the estate of the ward, to be substantiated by ordinary proof. It may be likened to the case of an executor or administrator, claiming, on his accounting, to be reimbursed out of the estate for the board of the deceased, during his lifetime.

Again, it is objected that the guardian kept no accounts, and therefore it is urged that every intendment must be against her. She gives, as a reason in substance, that she did not regard it as necessary, as she intended her child should have what was left. This was in accordance with natural love and instinct. It is not the case of a previously expressed intention to charge him nothing for support. In the case of Cunningham *v.* Cunningham (4 *Gratt.* [*Va.*], 43), being the case of a mother as guardian, an allowance was made for support, although no accounts had been regularly kept.

Counsel for contestants urges the view that this court has no right to adjudicate in regard to the proceeds of

the sales in partition of the minor's real estate, the Supreme Court having exclusive jurisdiction over that fund. He, doubtless, would be right, had not that court parted with its control over them by directing them to be paid to the general guardian for the purpose stated. This court has undoubted power to call her to account for any and all of the estate of the minor, however it may have been received.

In the account are contained charges for moneys paid to counsel for services in various proceedings relating to the estate of the ward, amounting, in the aggregate, to $645, including services rendered on this accounting. As much of the litigation has been in this court before me, and as I have had occasion to know its persistent and somewhat acrimonious character, as well as the complex nature of many of the matters, I do not regard the charges as much out of the way. I allow these items to the extent of $575. The items reduced I have marked on the margin of the account filed. There is nothing in the objection that the vouchers for the money paid to counsel were very recently executed. It is a very common practice in this court to permit parties to procure proper vouchers pending the litigation, and even after the case has been submitted. Mr. O'Neil, her counsel, seems to have retained, from moneys in his hands belonging to Mrs. Voëssing, and to have been paid by her, more than the sum embraced in the vouchers and account.

The guardian should be charged with the money belonging to the ward, received by her, amounting to $3,543, and with $252 interest, as charged in her account on file, making, in all, $3,795. I have concluded to allow

her an average of $4.00 per week during about eight years and seven months of the life of the ward, for board, clothing and education, to the amount of $1,784, and medical attendance and medicines, $66, making $1,850, and for services of counsel, $575; in all $2,475; leaving a balance in her hands of $1,370, from which her commissions, amounting to $119,87, are to be deducted. The charge for funeral expenses, post-mortem examination, &c., amounting to $226.50, must be disallowed in this proceeding.   They belong in her account as administratrix of the deceased, and are properly under the jurisdiction of the Surrogate of New York.

Ordered accordingly.