IN THE MATTER OF THE FINAL ACCOUNTING OF STEPHEN S. WANDELL, AS GENERAL GUARDIAN OF FLORENCE L. CRAIG, FORMERLY FLORENCE L. PEASE.

*Guardian — should not apply more than the income of the fund held for his ward to the latter's support — exceptions to the rule — when made and how established.*

The income of a fund held by a guardian for his ward is the primary fund from which to give support and maintenance to the latter, and the expenditures and disbursements to be made for such purposes will generally be limited to the income from the fund.

Where, however, the fund is small and more means are necessary to the due maintenance of the ward than can be derived from the income the capital may be broken in upon, only, however, to the extent necessary to answer the just and proper demands of the ward, having in view the amount of the fund and the situation, circumstances and condition of the ward in the particular case. The burden of showing an encroachment upon the principal to have been necessary rests upon the guardian on his accounting, either by the production of an order of the court giving the right to make the payments or by furnishing undoubted proof fully establishing the fact.

In 1872 the appellant had a fund of $9,970.83, as guardian for a girl between twelve and thirteen years of age, occupying a position of high respectability and of considerable refinement. Upon the settlement of the guardian's account it appeared that he had expended in the support, education and maintenance of his ward a sum exceeding by the amount of several thousand dollars the income of the fund. By the decree settling his accounts he was allowed the income of the fund up to 1876, and thereafter he was allowed to encroach upon the principal to an amount sufficient to make the annual expenditure $900, thereby encroaching upon the principal to the extent of $1,204.50.

*Held,* that the decree was correct; that the guardian should not be allowed to charge the remainder of the expenditures upon the fund.

APPEAL by Stephen S. Wandell from a decree of the surrogate of Albany county taking and stating the accounts of the said Wandell, as guardian of Florence L. Craig.

*Smith, Fursman & Cowen,* for the guardian, appellant.

*Alonzo P. Strong,* for Florence L. Craig, respondent.

BOCKES, J.:

This is an appeal by Stephen S. Wandell from the decree of the surrogate of Albany county, rendered on final accounting by him as general guardian of Florence L. Craig, formerly Florence L. Pease.

The appellant rendered his account in due form, to which objections were interposed as to various items, both of debit and credit, whereupon a reference was ordered to a referee to take proofs relating thereto, and to state the account and report thereon, with the evidence taken by him. The referee proceeded with the reference, made his report in detail, stated the account with annual rests, wherein he made to the guardian, because of disbusements for his ward, some allowances (hereafter noted) over and above the income received by him from the fund in his hands, which excess

went in reduction thereof, but refused further depletion of the fund by an allowance to the guardian of disbursements as was claimed in his account.

The fund was $9,970.83, received by the guardian in 1872 and 1873, and the allowances to him made in the report and decree going in reduction thereof were as follows: Two hundred dollars for the time intervening between May 1, 1872, and January 1, 1873, and an increase over and above the income for the years 1876, 1877, 1878 and 1879, to an extent making the aggregate annual allowances for expenditures and disbursements for those years $900 each.

To be specific as to those allowances over and above the income from the fund, they were as follows : For 1876, $226.25 ; for 1877, $242.08 ; for 1878, $259.02, and for 1879, $277.15.

For the years 1873, 1874 and 1875 the allowances to the guardian were limited to the actual income, $673.75, each year; and all disbursements claimed to have been made by him from and including December 23, 1879, to the end of the account, were uncontested by the ward, and were credited to the guardian as the same were stated and claimed in his account.

Besides the above allowances to him, over and above the income from the fund, aggregating $1,204.50, the guardian claimed in his account to be further credited and allowed for expenditures and disbursements for his ward as follows: For the period preceding January 1, 1873, $192.20 ; for 1873, $322.40 ; for 1874, $296.44 ; for 1875, $433.13 ; for 1876, $272.48 ; for 1877, $646.12 ; for 1878, $580.01, and for 1879, $322.91, which sums, if allowed to him, would further deplete the fund to the extent of their aggregate amount. His claim for these allowances was rejected by the referee's report and surrogate's decree ; and such disallowance raises the question presented on this appeal.

It is the settled and sound doctrine of the law that the income from a fund held by a guardian belonging to his ward is the primary fund from which to give support and maintenance to the latter; and the expenditures and disbursements so to be made will generally be limited to the income from the fund. But where the fund is small and more means are necessary to the due maintenance of the ward than can be derived from the income,

the capital may be broken in upon, only, however, to the extent necessary to answer the just and proper demands of the ward, having in view the amount of the fund and the situation, circumstances and condition of the ward in the particular case. The burden of showing an encroachment upon the principal fund to be necessary and proper, rests upon the guardian on his accounting, either by the production of an order of the court giving the right, or by furnishing undoubted proof fully establishing the fact. That these sound rules of law are applicable to the case in hand, is manifest on examination of the following authorities: 2 Story's Eq. Jur., § 1355; *Voessing* v. *Voessing* (4 Redf., 360, and cases cited on page 365); *Clark* v. *Clark* (8 Paige, 152); *Matter of Bostwick* (4 Johns. Ch., 102); *Kelaher* v. *McCahill* (26 Hun, 148); *In re Clements* (17 W. Dig., 431). There are many other cases, both in this country and in England, to the same effect. The referee in his report recognized the doctrine of these cases and acted upon it, and in so doing exercised circumspection and sound judgment. As he states, he took into consideration the amount of income applicable to the use of the ward, her age and educational needs, the necessity of affording her proper care and attention, and her previous, then present and probable social standing. The fund was $9,970.83, after January 1, 1874, $9,625.17. While there was some other property belonging to the ward, it was of comparatively small value and wholly unproductive, nor was it probable that it could be made available in any way in the immediate future. The entire really available fund was as above stated. The annual income to be depended on from this fund, after the last mentioned date, was $673.75. This would seem to be a very respectable sum, in view of the small amount of the fund, for the support and maintenance of a young girl in good health, aged from fourteen to seventeen years, and this too even in view of the then present and previous social position of the ward in this case. Her means were small and it was requisite that they should be employed with caution and prudence. There was not sufficient for 'the indulgence of extravagance in the least degree. The guardian was, therefore, especially bound to observe prudence and strict economy in the management of her affairs. Less than this would be, in law, negligence on his part. The case shows that for the

years prior to January, 1876, the income ($673.75), used circumspectly, would have met all the ward's absolute necessities for education and maintenance, and would, too, have sustained her in substantially the same social position in all respects as that to which she had been accustomed, which, by the way, was one of high respectability and of considerable degree of refinement. It is said, and it is a sound observation, that the guardian, in supplying the needs of his ward, must consider not so much the style of life to which the latter may have been accustomed as the amount of the income at his disposal. If, to maintain such style, destitution would soon follow, the future welfare of the ward would suggest a change of surroundings to a simple and less expensive mode of life. The limitation of the allowance in this case to the amount of the income for the period specified in the referee's report, sanctioned by the surrogate, was, as we think, entirely right.

For the four years following January 1, 1876, an allowance of $900 annually was made. This broke in somewhat upon the principal fund. The amount allowed in diminution of the fund during those years was $986.50, an average of $246.62 per year. It can be readily seen that for this period an increase of the allowance might well be urged as reasonable and right. There was a proper demand for some increase in order to secure to the ward greater educational advantages at her then age, and to obtain a better and more expensive wardrobe, to say nothing of many little expenses incident to the social life of a young lady of genteel surroundings. This demand was recognized by the referee in a liberal spirit in the allowance of $900 annually, holding in mind the comparative insignificance of the fund from which the amount was to be derived. An allowance beyond that sum, we think, would have been absolutely extravagant and unreasonable under the circumstances of this case. The rule to be applied in passing a guardian's accounts is that of fidelity and ordinary diligence and prudence in the execution of his trust, and in the absence of fraud his acts will be liberally construed. But a liberality of construction which would lead to the speedy and entire depletion of his ward's funds could not be permitted except in the most extreme case of imperative necessity.

The referee, in stating the guardian's account in this case, has, as

we think, exercised in favor of the latter a liberal discretion to the full extent sanctioned by public policy and sound judgment.

It is to be regretted that the line of action pursued by the guardian has occasioned loss to him, but the just and sound principles of law, above stated as applicable to this case, must be maintained by the court in their integrity. That he acted in a spirit of kind feeling towards his ward, and in entire good faith, may induce commiseration, but cannot be allowed to override wholesome rules of action applicable to cases of confidence and trust.

It is urged that there is a mistake in stating the account in the decree amounting to $282.61, which should be corrected. This is sought to be sustained by the statement in the appellant's printed points, that from January 1, 1880, to July 8, 1880, the guardian expended for the ward $1,204.71, and that after she attained her majority he paid her $3,067.14; in all, $4,271.19 (corrected, $4,271.85) But in this statement the counsel includes the following items (fol. 67), which were not payments to the ward, to wit:

| | |
|---|---:|
| Five per cent on income | $7 28 |
| Commissions on principal received | 199 70 |
| Paid for preparing account | 78 00 |
| | $284 98 |

Thus it seems that the error is but $2.37, and that in favor of the appellant.

The respondent's counsel has taken the point that the appeal in this case does not bring up any question of fact, but only questions of law, and cites us to the Code (§§ 2545, 2568, 2576, 2586), and also to Rule 42 of this court, and also to 2 Revised Statutes (Edm. ed.), 634. But inasmuch as we think there should be an affirmance of the decree appealed from on the merits, we omit an examination of this question.

Surrogate's decree affirmed, with costs.

LEARNED, P. J., and BOARDMAN, J., concurred.

Decree affirmed, with costs against appellant personally.