IN THE MATTER OF THE FINAL ACCOUNTING OF HENRY MILLER, AS GUARDIAN OF OWEN L. ELDRIDGE, AN INFANT.

*Guardian — allowance may be made for necessaries furnished by him to the infant, before the issue of letters of guardianship.*

Upon an application by one who had been named as the guardian of an infant in its mother's will to have his accounts settled and to be discharged, the surrogate may, in a proper case, allow to the guardian the amounts expended by him in procuring necessaries for the infant prior to the time when letters of guardianship were formally issued to him.

In making such allowance it must be shown that the amounts so expended were

advanced upon the faith and credit of the infant's estate,. and that they were not intended to be mere gratuities, and the rule that the principal of an infant's estate should not be encroached upon must be borne in mind.

APPEAL from decrees and orders of the surrogate of Sullivan county, entered upon the final accounting of Henry Miller, as guardian of the person and estate of Owen L. Eldridge, an infant.

*Peter E. Palen*, for Miller, guardian, appellant.

*Fancher & Sewell*, for special guardian, respondent.

LEARNED, P. J.:

Polly M. Eldridge died July, 1869, leaving Owen L. Eldridge, an infant of about four years, surviving. His father had died previously. She made a will which was duly admitted to probate, July, 1870. By this she gave her property to Owen; appointed Henry Miller executor, and expressed her wish that Miller should be guardian of Owen, and have all the care of his property till he became twenty-one, and that Owen should live with Miller. Letters testamentary were issued to Miller. After paying debts and funeral expenses there remained in his hands $412.36. Miller took the infant Owen into his care and custody about July 15, 1869, and furnished his support and maintenance till March 22, 1883. We may assume these facts since offer of proof was rejected. On the 22d of June, 1880, Miller was appointed guardian of the infant Owen. On the 2d of April, 1882, Miller, as such guardian, received $1,346.33, pension money of the infant. On the 24th of April, 1883, Miller applied to have his accounts as guardian settled, and to be discharged.

On the accounting he charged himself with the $412.36 and interest, and with the $1,346.33 and interest, and credited himself for certain expenses. He also credited himself with the expense of the maintenance of the infant for ten years. He offered proof of the value of such maintenance over and above what the infant was able to or did earn.

The Surrogate disallowed all of the claim for such maintenance prior to the appointment of Miller as guardian, viz., $1,750, and directed the payment to the infant, by Miller, of $1,855.79.

Inasmuch as the guardian in his account had charged himself

with $412.36, being the amount which he had received as executor prior to his appointment as guardian, and as he was not allowed for the maintenance of the infant even to the extent of this amount, he applied for leave to amend his account by deducting this amount therefrom. This was refused. The guardian appeals.

It is very plain that the guardian, under the request contained in the will, had acted as if he were legally appointed. He had taken care of the infant, and in doing so had used moneys which he really held as executor, but in which the infant had the sole beneficiary interest. When, afterwards, he was appointed guardian and received money in that capacity, and then applied for a settlement of his accounts, it was not strange that he made the mistake of charging himself also, as guardian, with the $412.36. If the surrogate was correct in holding that a guardian cannot be credited for money expended in the support of the infant, prior to the appointment of the guardian, then, clearly, justice required that this guardian should have been allowed to amend his account. If that had been permitted he could have accounted, as executor, for the $412.36, and could have given proof of the application of that money to the infant's benefit, if he had so applied it.

But we think the surrogate wrong upon the main question. Miller was under no obligation to support the infant. He was not related to the infant in any way. If one who supplies necessaries to an infant, before a guardian has been appointed, could not be compensated from the infant's estate, the infant might be allowed to perish or to be supported by the public authorities, without having the benefit of that support which his own property would rightfully procure for him. It has been held, it is true, that legal services, previously rendered by a guardian, cannot be charged (*Clowes* v. *Van Antwerp*, 4 Barb., 416), nor traveling expenses of the guardian. (*Ainsworth* v. *Aldrich*, 15 Week. Dig., 199.) But these decisions do not apply to necessaries. (*Voessing* v. *Voessing*, 4 Redf., 360; *Hyland* v. *Baxter*, 31 Hun, 354.) The matter is discussed, with a reference to authorities, *In Matter of Bostwick* (4 Johns. Ch., 100). We think that undoubtedly, in a proper case, a guardian might be allowed for necessaries furnished to the infant before the guardian's appointment. But it must be distinctly understood that we do not pass upon the merits of the present case.

Many circumstances are to be considered which do not sufficiently appear in the papers before us to justify an opinion. For instance, a general rule is that principal should not be encroached upon unless necessity requires. Another question which may arise may be whether the support furnished by the guardian was, in any sense, either by understanding or by legal implication, furnished upon the credit of the infant's estate, or of that part of it received in the pension moneys. The question may be put whether if some other person had been appointed guardian and had received the pension money, Miller would have had a claim against that guardian in respect to the pension money for necessaries furnished. We do not pass upon any of these questions, nor are we even willing to say that such proof may not be given as will show that Miller has no claim for compensation out of the pension money for support furnished prior to June 22, 1880. The fact that the infant was living in Miller's family may, on a hearing, be some indication that this case came under the ordinary rule as to members of the same household having no claim for compensation for mutual services.

We are then of the opinion that as to the sum of $412.36, and the interest thereon, the guardian should be allowed to amend his account, if he desires to do so, or that this money should be applied, so far as may be needed, to compensate the guardian for the support and maintenance furnished the infant, whatever that may be found to be worth.

We are of opinion also that the evidence offered by the guardian as to the maintenance and support furnished prior to June 22, 1880, should have been admitted, and that the matter should be sent back to the surrogate to determine whether any and what amount should be allowed to compensate the guardian for such support and maintenance out of the aforesaid pension moneys.

The decree of the surrogate must be reversed and the matter sent back to him for a rehearing on the principles indicated; costs of the appeal should be allowed to the guardian.

Present — LEARNED, P. J., BOOKES and LANDON, JJ.

Decree reversed and matter sent back for rehearing on principles indicated in opinion; costs of appeal allowed to guardian.