WILLIAM J. SHEPARD, AS SECOND ADMINISTRATOR, DE BONIS NON, OF EZRA N. THOMAS, DECEASED, APPELLANT, *v.* JEAN R. STEBBINS, AS SURVIVING EXECUTOR, ETC., OF JOHN C. COOPER AND ALBERTIS WHITFORD, LATE ADMINISTRATOR, DE BONIS NON, ETC., RESPONDENTS, IMPLEADED WITH BAYARD T. THOMAS AND OTHERS, APPELLANTS.

*Expenditures made by an administrator and general guardian in supporting the children of an intestate on a farm belonging to them — when they will be allowed although no order was made directing the expenditures to be made.*

Where an administrator, who is also a general guardian of the children of an intestate, with the approval and consent of the other general guardians of the children, in perfect good faith and with the honest and earnest purpose of promoting the welfare, comfort and best interest of their wards, and of their estate, determines to keep the family of children together upon the homestead farm of the intestate, and expends certain sums of money received by him, as administrator, in the payment of taxes on the farm, and for materials and labor employed in the care of, and in making repairs to the real estate and in the support and education of the children, and the expenditures so made are such that if permission had been asked of the court to make the same such authority would have been given, the acts of the administrator and guardian in thus expending the money belonging to the estate of the intestate will be approved and his accounts will be allowed and passed by the court.

The claim for the support and maintenance of the family of the testator should not be disallowed because a separate account was not kept of such expenditures made for each of the infant children, as such an account will be quite impossible where the children are all given a common home, and the necessaries for all are supplied from one common fund.

APPEAL from a judgment, entered in Jefferson county, September 21, 1885, on the report of a referee, dismissing the plaintiffs' complaint, with costs.

*Elon R. Brown*, for the appellants.

*A. H. Sawyer*, for the respondents.

MARTIN, J.:

This was an action against the executors of John C. Cooper, to compel them to account for the moneys and property which came into his hands as administrator of the estate of Ezra N. Thomas. It was commenced by the plaintiff as administrator *de bonis non* of

said Thomas. On the application of Cooper's executors the children of Thomas were all made parties to this action, except Frank J. Thomas, who had, before the commencement of the action, transferred all his interest in the estate to his brother Bayard T. Thomas. All the persons actually interested in the real or personal estate of Ezra N. Thomas are parties.

On December 23, 1874, Ezra N. Thomas and his wife Emma Thomas both died intestate, the wife surviving the husband but a few hours. They left them surviving seven infant children of from four to eighteen years of age, who were their only heirs-at-law and next of kin. At the time of his death Ezra N. Thomas owned two adjoining farms, with horses, cows and farming and dairy implements, hay, grain and other produce thereon, and had about $6,000 invested in stocks, notes, bonds and mortgages. One of the farms was rented, and the other was, and for many years had been, the homestead of said Thomas and occupied by him and his family.

Before his death Ezra N. Thomas requested his pastor, Henry W. Bennett, to look after his family after his death. In pursuance of this request, after Thomas' death Bennett applied for and procured the appointment of John C. Cooper, Henry W. Bennett and Hubbard McKee as general guardians of such infant children. John C. Cooper was also appointed as the administrator of the estate of said Thomas. As the children were without near relatives who were interested in their welfare, the guardians and administrator, in perfect good faith and with the honest and earnest purpose of promoting the welfare, comfort and best interests of their wards and of their estate, determined to keep this family of children together upon the homestead farm. The active management and control of the business was intrusted to Cooper, and he was charged with the details and expenditures which such a course involved.

Under the advice and with the consent of the other guardians, Cooper employed an aunt of the children as a housekeeper, and the family was kept together on the homestead premises. The children were clothed, sent to school, provided for and maintained, and the farm and dairy were operated and managed as in the lifetime of Ezra N. Thomas. Cooper took possession of the property and caused an inventory to be made, but it was not filed. The hay and oats on the farm were fed out to the horses and cattle, and the other

products of the farm and dairy, and some of the avails of the securities held by Cooper, were used by him in making necessary repairs on the real estate, managing the farm and dairy, in the support of the family, and payment of debts, taxes, funeral expenses and expenses of administration. Matters were thus conducted for the period of about two years, when Cooper died and the defendants, Gilbert and Stebbins, were duly appointed as his executors. No judicial settlement of Cooper's accounts, either as guardian or administrator, was ever had. Nor did he apply for or obtain leave of the court to transfer funds in his hands, as administrator, to the guardian's account, or to make any of the expenditures made by him.

After Cooper's death Albertus Whitford was duly appointed administrator *de bonis non* of Ezra N. Thomas, and before this action was commenced the executors of Cooper had a settlement with Whitford, as such administrator, of all matters known to them relating to the management by Cooper of the Thomas estate and property. Whitford received all the undisposed of and accumulated personal property of the Thomas estate which came to the hands of Cooper, and Cooper's executors paid Whitford the balance ascertained on the settlement to be due from Cooper, with interest to the time of payment. Whitford was afterwards removed, and the plaintiff was appointed administrator *de bonis non* of Ezra N. Thomas, and is now such administrator. A judicial settlement of Whitford's accounts was had, upon which he was charged with the proceeds of the property received from, and the money paid to him by Cooper's executors pursuant to his settlement with them, and he delivered to plaintiff all the property of the estate which came into his hands, which was not charged to him on the judicial settlement of his accounts. There are no outstanding debts against the estate of either Ezra N. Thomas or Emma Thomas.

Cooper, while such administrator, received of personal property and for products from the farm and dairy $10,834.25.

| | | |
|---|---|---|
| There was turned over to his successor | $5,880 | 46 |
| Cooper paid debts | 215 | 28 |
| Cooper paid funeral expenses | 146 | 01 |
| Cooper paid liens and taxes on farm | 151 | 91 |
| Cooper paid expenses of administration | 22 | 20 |

| | |
|---|---:|
| Cooper paid necessary repairs on real estate......... | $641 09 |
| Cooper paid for support of family and care of farm and dairy.................................... | 2,282 00 |
| His commissions were............................ | 148 84 |
| There was paid his successor ..................... | 1,374 72 |
| | $10,862 51 |

Upon the facts the learned referee held, " that in his capacity as administrator, John C. Cooper was a stranger to the realty and owed no duty to the heirs-at-law; that without leave of court he could not bring funds held by him as administrator into his hands as guardian, and that he had no authority to make expenditures for liens and taxes upon, or repairs to, the real estate, to carry on the farms and dairy, or to support, maintain and educate the family, but under the circumstances in this case, if an application had been made in advance, all the expenditures made by him in his two-fold capacity as administrator and as guardian, would have been authorized by the court, and the expenditures having been made in good faith and for the benefit of his *cestuis que trust,* the court will now sanction and confirm them, all parties in interest being parties to this action." To that portion of this conclusion which holds that if application had been made to the court all expenditures made would have been authorized, and that the court will now sanction and confirm them, the plaintiff excepted.

All parties admit that Cooper was honest; that he acted in good faith; that none of his expenditures were either wasteful, extravagant, unnecessary or in any way beneficial to himself. The plaintiff, however, contends that Cooper had no authority to pay the taxes and liens on the property of these children. That he had no such authority as administrator, is doubtless true. But it must be remembered that he was not only administrator, but also the general guardian of a portion of the infants, and acting under the advice, with the consent of, and for the other general guardians of the children, in performing all the acts performed by him in the care of these children and their property, so that these acts in regard to the support of the children and the management of their property were not his acts alone, but the acts of all together. We think

there is no doubt but that it was the duty of such guardians to pay the taxes on the property of their wards and thus prevent its sale and ultimate loss to them. "A guardian may relieve his ward's real estate from elegit, extent, mortgage or lien, which if left unredeemed would probably destroy the ward's interest." ( 2 Perry on Trusts, § 607 ; *Terry* v. *Black*, 58 N. Y., 185 ; 3 R. S. [7th ed.], 2347, § 20.)

The plaintiff also objects to the item of $641.09 credited to Cooper for materials and labor employed in making repairs on the real estate of these infants. We do not think this objection a valid one. That these repairs were necessary to the proper care and maintenance of the real estate of the infants, is found by the referee and fully sustained by the evidence. The statute makes it the duty of every general guardian to keep the things that he may have in custody belonging to his ward and the inheritance of his ward, and not to make or suffer any waste, sale or destruction of such things or of such inheritance, but to keep up and sustain the houses, gardens and other appurtenances to the lands of his ward by and with the issues and profits thereof, or with such other moneys belonging to his ward as shall be in his hands. (3 R. S., 2347, § 20 ; *Emerson* v. *Spicer*, 46 N. Y., 596 ; *White* v. *Parker*, 8 Barb., 52 ; *Copley* v. *O'Niel*, 39 How. 41.) Under this statute we think it was the duty of the guardians of these children to keep and maintain the buildings and fences on these farms, and they having employed only such sum as was necessary for that purpose, Cooper's estate was entitled to credit therefor.

The only remaining item to which the plaintiff objects is to the sum of $2,282 paid out by Cooper for the support and maintenance of this family of children, the cultivation of the farm and care of the dairy thereon. There can be no doubt but that the course pursued by these guardians in maintaining the children as one family at their home, under the care of their aunt, in educating them, furnishing such articles as were needed for their support, and in keeping them on the farm, furnishing employment for such as were able to work, and thus making them partially self-sustaining instead of breaking up and scattering the family, renting the real estate and selling the personal property, and from the proceeds paying the board of these children, was, and was intended to be, for the best interest of this family, hence the question is whether the court will now refuse to

allow the estate of this deceased guardian and administrator the amount actually expended by him for the support and maintenance of these children, and the cultivation and care of their farms and property, notwithstanding the fact that it was expended honestly and in entire good faith, and was for the best interests of such children and their estates. We think, as was held by the learned referee, that, under the circumstances of this case, if application had been made in advance all the expenditures made by Cooper in his two-fold capacity, as administrator and guardian of these children, would have been authorized by the court, and that the expenditures having been made in good faith and for the benefit of the *cestuis que trust*, the court should now sanction and confirm them. This conclusion is sustained by the following authorities: *Wilkes* v. *Rogers* (6 Johns., 566); *Matter of Bostwick* (4 Johns. Ch., 100); *Voessing* v. *Voessing* (4 Redf., 360); *Gladding* v. *Follett* (2 Dem., 58); *Matter of Muller* (29 Hun, 419); *Matter of Clement* (17 W. Dig., 413); *Matter of Wandell* (32 Hun, 545); *Matter of Miller* (34 id., 267); *Browne* v. *Bedford* (4 Dem., 304); *Hyland* v. *Baxter* (98 N. Y., 610; S. C., 42 Hun, 9).

Nor do we think that the claim for the support and maintenance of this family should have been disallowed because no separate account was made up for each infant. Such an account would have been quite impossible as the children were all given a common home, the necessities of all were supplied from one common fund, they were all treated alike, the expense of furnishing them with a home was indivisible, and, under the evidence, we think an equal division of such expenses between them was proper and just to all. We do not think these guardians were required to break up this family or to maintain them separately before they could be allowed for their support. (42 Hun, 10.)

Among the assets of this estate received by Cooper were thirteen shares of Rome, Watertown and Ogdensburgh Railroad stock, which were inventoried at $975. This stock was turned over to his successor, and was by him sold for $275. In 1872 it was above par. It was worth from seventy-five to seventy-seven cents in January, 1875, and gradually depreciated so that in October it was worth fifty cents, and was worth fifty cents during March and April of 1876. The plaintiff claims that Cooper was guilty of negligence and mis-

management in not selling this stock when it was first received by him, and that he should have been charged with the difference between its value then and when sold. The learned referee has found that Cooper's failure to sell this stock was not occasioned by his negligence, but arose from a mistake of judgment. We think the conclusion of the referee was justified by the evidence, and that Cooper's estate should not be held for the loss sustained by its depreciation in value. (*Matter of Weston*, 91 N. Y., 503.)

These considerations lead us to the conclusion that no error was committed by the referee requiring a reversal of the judgment herein.

The judgment should be affirmed, with costs.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.