---

## In re WRIGHT.

(*Surrogate's Court, New York County.* February 2, 1889.)

GUARDIAN AND WARD—SUPPORT OF WARD—PARENT AND CHILD.
A father who, before his appointment as guardian of his child, expended money for her support, without any judicial sanction therefor, may, after his appointment, be allowed for such sums upon the settlement of his accounts; it appearing that he was not himself able to support her.

*A. D. Ditmars*, for petitioner.    *Benjamin Foster*, special guardian for the infant.

RANSOM, S. This is an application by Charles S. Wright, the father and general guardian of Florence Wright, for the judicial settlement of his account, and the revocation of his letters. No objection is made to a decree for revocation. The only questions arising are upon certain credits claimed by the guardian. These may be divided into two classes: (1) Expenditures made on behalf of the infant subsequent to his appointment; (2) expenditures made on behalf of the infant prior to his appointment. To entitle him to credit for either of these classes of payments, it was essential that the guardian should show his incapacity to support the infant, (his daughter;) and an order was made sending the matter before an assistant to the surrogate to take testimony upon that subject, and report it to the court. Such testimony has

been taken, and to my mind fully establishes that his income was not suffi-
cient for the support of himself and the child, and that he was justified in
drawing on his ward's estate. This fact being proven, a question arises as
to an allowance to the general guardian of such sums as were expended by
him prior to his appointment.

In the case of *Clowes* v. *Van Antwerp*, 4 Barb. 418, it was held that upon a
settlement of the accounts of a general guardian the surrogate is not authorized
to make any allowance to such guardian for services rendered or expenses in-
curred by him previous to his appointment as guardian.

In *Voessing* v. *Voessing*, 4 Redf. Sur. 360, the father of the infant died in
1870, leaving a widow and one child. In 1873 the widow was appointed
guardian of the child, who had been maintained by her since the death of its
father. The facts as to her inability to support her child were fully estab-
lished. It was held by Surrogate COFFIN that "the guardian should be al-
lowed, not only for her maintenance of the ward during the time she acted as
such, but also from the time of its father's death; and that her encroachment
on the fund having been, on the whole, for the welfare of the ward, and nec-
essary for its support, should be sanctioned." This case was decided in 1880,
and is the decision of a single judge. The case of *Clowes* v. *Van Antwerp*,
*supra*, was decided in 1848, but is not referred to in the opinion of the learned
surrogate.

In *Hyland* v. *Baxter*, 98 N. Y. 610, the intestate died in 1862, leaving a
widow and three minor children. No guardian was appointed for the chil-
dren until 1872, when one Zimmer was appointed. The children continued to
live with their mother, who was a co-administrator of the intestate, and
maintained them for several years, the means being supplied by her co-admin-
istrator. These advances were set out in the account of her co-administrator,
who claimed credit therefor. It was referred to an auditor, who reported
that the distributive shares of the minors were expended by the administra-
trix in their maintenance, and under such circumstances that, if she had been
general guardian, the expenditure would have been allowed on her accounting
as such general guardian. But the auditor further reported that the admin-
istratrix had no right, as administratrix, to make such payment, and that the
surrogate had no power, upon the accounting of the administrators, to allow
them such credit on their account. The surrogate adopted the conclusion of
the auditor, and, pending an appeal to the supreme court from his de-
cree, this action was brought · to have the amount so advanced applied in
deduction of the sums adjudged against the administrators on account of the
distributive shares of the children. The appeal from the surrogate's decision
was still pending and undetermined. The defendants succeeded in this action.
The general term affirmed that decision, and, on appeal to the court of appeals,
the court cited, approvingly, numerous cases upholding the power of a court
of equity to make allowances out of the estate of infants for past maintenance;
and while confirming the decision of the general term, dismissing the com-
plaint, on the ground that the decision of the surrogate was *res adjudicata*,
said "that the objection to the allowance of the sums necessarily expended
for the support of the infants seems very inequitable."

*In re Bostwick*, 4 Johns. Ch. 105, was an application of the mother of cer-
tain infants, who had a life-estate in the property in which the children had
the remainder, that part of the principal, which, after her death, would go to
her children, might be applied towards their maintenance, and that the exec-
utors pay her the amount of a debt already incurred, and an annual allowance
out of the principal for the support of the children. The application was
granted in both respects, the court saying: "It would lead to great inconven-
ience [not to do so;] for, though the wants of an infant might be ever so
pressing, he could not receive any maintenance (charity excepted) without the
expense of a suit and reference to a master."

In view of these cases, the thought at once strikes us,—and does so in this case,—why did not the general guardian, prior to making these expenditures, apply to a proper court for his appointment as guardian, or for the advancement of a sum of money for the purpose? This natural query is answered by the court of appeals in *Hyland* v. *Baxter, supra:* "The general principle has been applied in many cases that an allowance for past maintenance may be made to executors, trustees, or guardians, upon an accounting or upon petition, even when it requires a breaking in upon the capital, provided the expenditure for which reimbursement is sought would have been authorized by the court if an application had been made in advance;" thus establishing that mere laches will not affect the action of the court.

The latest case casting any light upon this point which I have been able to find is *In re Miller*, 34 Hun, 268. In this case the testatrix died in 1869, leaving a child. The will of testatrix contained a request that the executor should be the guardian of this child. The executor supported the infant from 1869 to 1883. In 1880 the executor was appointed guardian of the child. On his accounting in 1883 he credited himself with the expenses of the maintenance of the infant for 10 years. It appeared that he had used the money in his hands as executor for the support of the infant. The court said: "We think that undoubtedly, in a proper case, a guardian may be allowed for necessaries furnished to the infant before the guardian's appointment." A singular fact is that this is the first decision in which the case of *Clowes* v. *Van Antwerp, supra*, is referred to by the court. It was simply cited in the brief of· the appellant in *Hyland* v. *Baxter* in the court of appeals, but was not commented upon by the court.

It will be perceived from this review of some of the more important cases touching this subject that each case depends in a great measure upon its peculiar circumstances. The broad rule as laid down in the first case quoted, (*Clowes* v. *Van Antwerp*,) while in terms not overruled or limited, has certainly been ignored. The more liberal application of the rules of equity applied in these later days would undoubtedly sanction a modification of its rigidity, to accord with the decision I have reached, viz., that the guardian was justified in making the payments he did before his appointment as general guardian, and should be allowed therefor in his account. Submit decree, together with affidavits and. bills of costs, for the purpose of adjustment and settlement.